[Civil No. 3713. Filed December 21, 1936.]

[63 Pac. (2d) 647.]

HARRY G. VAN DENBURGH, as Administrator of the Estate of EMMA BEATRICE CLARK, Deceased, Appellant, v. TUNGSTEN REEF MINES COMPANY, a Corporation, GEORGE KRIEG, GRACE L. PARSONS and JESSIE B. PORTER, Personally and as Directors of Said Corporation, and JOHN J. SEEMAN, Appellees.

Mr. Robert Young, Mr. Oscar S. Elvrum, and Messrs. Chalmers, Fennemore & Nairn, for Appellant.

Messrs. Kelby, Lawson & Garroway and Messrs. Ellinwood & Ross, for Appellee Tungsten Reef Mines Co.

Mr. Ernest C. Griffith, for Appellee John J. Seeman.

LOCKWOOD, C. J.—■ This is an appeal from a judgment of the superior court of Cochise county dismissing an action, after general and special demurrers to the complaint had been sustained. Since the judgment dismissing was based upon the sustaining of the demurrers, we must consider whether the latter ruling was correct, and, in so doing, must assume that the material allegations of the complaint are true.

The complaint is voluminous and we, therefore, summarize its allegations in narrative form as follows: In the month of June, 1918, there was incorporated in the state of Nevada, and under the laws of that state, a corporation named Tungsten Reef Mines Company, hereinafter called the company, with an authorized capital stock of 400,000 shares of the value of $1 each. It was permitted by its articles to maintain offices in Nevada, California, and Arizona, and actually kept its books, records, etc., in its California office. Immediately after its incorporation, it purchased certain mining claims and water rights in Cochise county, Arizona, from one A. J. Clark, giving to Clark as payment therefor practically all of its capital stock. The only real property of any importance ever owned by the company consisted of the mines

above described, together with the appurtenances. Up to the time of his death in 1927, A. J. Clark was the manager of the corporation and president of its board of directors, and directed the entire policy of the company. After his death, the widow, Emma Beatrice Clark, was chosen to fill the place left vacant by him, and continued as president and director up to the time of her death which occurred the 14th of June, 1934. The property was inactive during most of this time, but necessarily required the expenditure of some money for maintenance, and a considerable portion of this was advanced by Mrs. Clark. At the time of her death, there was outstanding some 364,000 shares of the corporate stock, of which she owned a little over one-third, the remainder being held by other persons in smaller amounts. The other members of the board of directors at that time were George Krieg and Mrs. Grace L. Parsons, Krieg being the secretary of the company. On the 5th of July, 1934, there was held a meeting of the survivors of the board of directors, consisting of Krieg and Parsons, at a private residence in Los Angeles, California, and at such meeting Jessie B. Porter was elected to fill the vacancy on the board caused by the death of Mrs. Clark, and was also elected president and treasurer. No notice had been given to the stockholders in general of the intended meeting of the board of directors, and particularly Harry G. Van Denburgh, plaintiff herein, who had just been appointed as administrator of the estate of Mrs. Clark, had no knowledge of it. After the election of Mrs. Porter, there was discussed and considered a contract for the sale of the mines of the corporation to John J. Seeman, one of the defendants herein, which was finally approved by the board. Immediately upon learning of the making of the contract, the plaintiff brought suit in the District Court of the United States, attempting to enjoin the directors

of the company from selling the property, or de-fendant Seeman from working it. Said action, however, was dismissed on the ground there was no diversity of citizenship, whereupon the present suit was brought. It is further alleged in the complaint that the contract of sale was unjust and unfair to such an extent that it constituted a fraud as against the stockholders of the company, and the prayer for relief was that the contract be declared void and of no effect; that Seeman be enjoined from in any way interfering with the property; that the meeting electing Jessie B. Porter as director, president, and treasurer be declared void; and that the title of the property be quieted as against the defendant Seeman and in the corporation. Service on defendant Seeman was made personally in Cochise county, and on the company by serving its statutory agent there. The directors of the company were served personally in California by a deputy sheriff of that state.

A motion to strike and also one to make more definite and certain was filed by defendants Seeman and the company, covering almost the entire complaint in whole or in part, and then they filed general and special demurrers which were, however, substantially similar in their grounds. The directors never appeared nor answered. Apparently from the minutes of the trial court, the motions to strike and to make more definite and certain were never disposed of, the court determining the case on the demurrers, on the 14th day of May, 1935, when the following minute entry was made:

"The Court declines jurisdiction because the subject matter of the litigation and the judgment would relate to the internal affairs and management of a sister state. The questions involved concern local administration and should be relegated to the State where the corporation was organized. The Court sus-

tains defendant's demurrers, both general and special and orders the plaintiff's complaint dismissed, and the same is hereby dismissed.''

No request to amend the complaint was made, either before it was dismissed or in the motion for new trial, nor was any amended complaint tendered, and the motion for new trial was denied, whereupon this appeal was taken.

■■ The demurrers to the complaint raise two points which we shall consider as seems advisable. The first was the jurisdiction of the court. It was urged by defendants in this behalf that the suit is, in effect, an attempt to interfere with the management of the internal affairs of a corporation organized under the laws of another state. The general rule in regard to such a situation is set forth in the case of *Rogers* v. *Guaranty Trust Co.*, 288 U. S. 123, 53 Sup. Ct. 295, 297, 77 L. Ed. 652, 89 A. L. R. 720, as follows:

"It has long been settled doctrine that a court—state or federal—sitting in one state will, as a general rule, decline to interfere with, or control by injunction or otherwise, the management of the internal affairs of a corporation organized under the laws of another state but will leave controversies as to such matters to the courts of the state of the domicile. [Citing cases.] While the District Court had jurisdiction to adjudge the rights of the parties, it does not follow that it was bound to exert that power. [Citing cases.] It was free in the exercise of a sound discretion to decline to pass upon the merits of the controversy and to relegate plaintiff to an appropriate forum. [Citing cases.] Obviously no definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits relating to the conduct of internal affairs of foreign corporations. But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency, and justice point to the courts

of the state of the domicile as appropriate tribunals for the determination of the particular case. [Citing cases.]"

And this rule is not seriously questioned by plaintiff. It is contended, however, that the present case does not fall within either part of the rule. Let us then examine the complaint to see which contention is correct. Reducing the allegations and the prayer of the complaint to its simplest form, it appears to us that it is an attempt to set aside a contract for the sale of real estate in Arizona, entered into by the board of directors of the company within the state of California. In order to set aside a contract made by a board of directors of a corporation, it is necessary to show either that the board was without authority to make the contract under the circumstances, or else that it was so made as to be, in effect, a fraud upon the corporation and its stockholders. It is admitted by plaintiff that two of the members of the board of directors who made the contract were both *de jure* and *de facto* directors of the company. It is also admitted that when a vacancy occurred on the board, as it did by the death of Mrs. Clark, the other directors were authorized to fill the vacancy. It is not contended by plaintiff that a *de jure* board of directors would not have had authority to sell the mining claims in question, provided the sale was *bona fide* in all respects and for a fully adequate consideration, but it is claimed that the filling of the vacancy existing on the board of directors was improperly done, in that the meeting of the directors at which time it was done was held without notice to any person except the interested parties; that it was not held at the office of the board of the company, but at a private residence; and that the contract which was made was, in effect, of such a nature that it amounted to the giv-

ing away of the property of the company for no real consideration.

■ So far as the validity of the election of Mrs. Clark's successor to the board is concerned, we are of the opinion that this is clearly a matter which affects only the internal management of the company itself, its validity being determined by the by-laws and articles of incorporation of the company and by the law of the state of Nevada, and perhaps that of the state of California. Certainly the law of Arizona and the rights of citizens of Arizona in no way affected the validity of the election of a third director, and if the canceling of such election were necessary in order to give the relief asked for in this action, there can be no question but that it would fall within the first part of the rule of *Rogers* v. *Guaranty Trust Co., supra.* Nor does plaintiff apparently lay much stress upon this point. His position is apparently based upon the claim that the contract in question may be attacked in the courts of Arizona on the theory (a) that it was a fraud perpetrated by the directors, and equity will, therefore, take cognizance of the matter wherever the parties can be reached, and (b) that since the property affected is situated within the state of Arizona and the company was properly served therein, it is a proceeding *in rem* and, therefore, within the jurisdiction of the local court. In support of these contentions many cases are cited.

■ It is claimed by plaintiff that the contract in question is voidable at the instance of a minority stockholder suing on behalf of the corporation because it is fraudulent in its nature. Since the fraud consists in the actions of the board of directors of the corporation, we think it is clear that they are indispensable parties to a suit attacking their actions, and, such being the case, personal service within the jurisdiction of the court is imperative. It will be observed, on

examining them carefully, that in the cases cited by plaintiff, which hold that when there has been misappropriation or waste of the corporate assests or mismanagement of its affairs by the directors, a suit in equity may be brought wherever the parties may be found, the directors or officers whose acts were claimed to be fraudulent were personally within the jurisdiction of the court and, therefore, amenable to its processes; while in the case at bar, none of these directors were ever personally served within the jurisdiction, nor have they appeared to answer the action. The jurisdiction of the Arizona courts cannot be sustained on the theory that this is an equitable action for fraudulent conversion or dissipation of the assets of the corporation by its directors.

■ Nor does the fact that the company has an office in Arizona and has designated a statutory agent in this state of itself give our courts jurisdiction to entertain this particular suit. The plaintiff's complaint shows that the contract which he attacks was entered into in the state of California; that he is a resident of California, acting under a decree of the California court appointing him as administrator; and that no liability was created by the contract in favor of a citizen of Arizona. All of the cases, so far as we are aware, which establish jurisdiction to hear a suit against a corporation merely because of its compliance with statutory requirements, such as those mentioned, refer to actions for the benefit of citizens of the state where the suit is brought. There is no attempt in the present case to protect the rights of any citizen of Arizona, but rather an attempt to protect the rights of a citizen of California in a suit which involved, *inter alia*, an investigation into the internal affairs of a Nevada corporation. We think it clear that the mere qualification of the company to do business in

Arizona does not, of itself, confer jurisdiction on the Arizona courts to entertain this kind of an action.

 It is next urged that the location of the property within the state of Arizona vests jurisdiction in our courts because, as an incident of the execution of the alleged fraudulent contract, the title to real estate located in Arizona may be affected. In the first place, it is not questioned the title to the property is now in the company, nor is there even a claim that anyone is now entitled to a conveyance thereof. The utmost that may be said is that if, as, and when certain conditions are complied with by defendant Seeman, and plaintiff himself says there is no obligation on Seeman to perform them, the latter will then be entitled to a conveyance. But even should that remote contingency occur, we think the principle which would then be involved is well discussed and its application pointed out in the case of *Massie* v. *Watts,* 6 Cranch, 148, 3 L. Ed. 181. In that case a suit was brought in Kentucky for the purpose of compelling a party, by exercise of the equitable powers of the Kentucky court, to convey lands situate in the state of Ohio. If the action had been purely one, *in rem,* involving a naked question of title, the jurisdiction in the action would, of course, be only in the state where the land was situate. Chief Justice Marshall, in confirming the decree of the Kentucky court, said:

"Was this cause, therefore, to be considered as involving a naked question of title, was it, for example, a contest between Watts and Powell, the jurisdiction of the circuit court of Kentucky would not be sustained. But where the question changes its character, where the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of *mala fides* practiced on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found, and

the circumstance, that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction. . . .

"Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree.

"The inquiry, therefore, will be, whether this be an unmixed question of title, or a case of fraud, trust or contract,"

and it was held that a question of title was not involved. See, also, *Promis* v. *Duke,* 208 Cal. 420, 281 Pac. 613. If such was the rule when it was claimed the right to a conveyance had already vested, much more is it true when it might never vest. The jurisdiction of the Arizona courts cannot be sustained on the theory that this is an action *in rem* to quiet title to land within the state. If our courts have jurisdiction, it must rest upon some other principle than that of the location of the real estate. It is, of course, true that the mere fact that an action might have been brought in some other states does not necessarily mean that it could not have been brought in Arizona. The only point which we now make is that the location of the land has no bearing upon the jurisdiction to entertain an action of this particular class.

But finally, even admitting that the Arizona courts had jurisdiction of the case, it is not always that a court which has the *right* to hear a case must exercise that right. There are certain cases where, while technically speaking, a court may *have* jurisdiction, yet, for certain reasons, it is inadvisable to exercise it. *Rogers* v. *Guaranty Trust Co., supra.* There are four matters which are generally considered

by a court in determining whether it will or will not hear an equitable proceeding involving a corporation and its acts, such as this, (a) are the officers and directors of the corporation located within the jurisdiction of the court, and can proper service be obtained upon them, (b) does the case involve the exercise of visitatorial powers upon the corporation, (c) does it require an investigation into the internal affairs and management of the corporation, and (d) are there matters of expediency and public policy bearing upon the question. In considering these matters, the trial court, of course, has some discretion, particularly in regard to the last one, and its action should not be reversed by an appellate tribunal unless an abuse of that discretion appears. It seems to us from the allegations of the complaint that in order to determine properly the issues involved therein, it would be necessary for our courts to obtain jurisdiction of the persons of the three directors elected, who made the alleged fraudulent contract; that we should investigate, to some extent at least, the internal affairs of the corporation, including the validity of the election of one member of the board of directors, and the powers of the board to make the contract in question; that we should make some examination into the laws of California and Nevada; and that we should secure the records and books of the corporation from another jurisdiction where they are generally kept. Under all these circumstances, we cannot say that the trial court abused its discretion when it determined, as shown by its minute entry, that it would decline to take jurisdiction of the action.

It is contended that the complaint should not have been dismissed without leave being first granted to amend. Had such leave been asked, it should have been granted, and it would, of course, have been reversible error for the court to refuse it. It

does not appear, however, that such request was made before judgment was rendered, nor that it was even suggested on the motion for new trial that plaintiff desired to amend. Such being the case, we think the plaintiff is not in a position to raise this point. It is unnecessary for us to discuss any of the other points raised on the appeal.

For the foregoing reasons, the judgment of the superior court of Cochise county is affirmed.

McALISTER and ROSS, JJ., concur.