746 P.2d 917

Barbara M. ARMSTRONG and Russell W. Armstrong, her husband, Plaintiffs-Appellants,

v.

ARAMCO SERVICES COMPANY, a Delaware corporation and Arabian-American Oil Company, a Delaware corporation, Defendants-Appellees.

No. 1 CA–CIV 8657.

Court of Appeals of Arizona, Division 1, Department A.

July 9, 1987.

Reconsideration Denied Sept. 22, 1987.

Review Denied Jan. 5, 1988.

Langerman, Begam, Lewis and Marks by Frank Lewis, and Wendi A. Sorensen, Phoenix, for plaintiffs-appellants.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Timothy Berg, Gregory Osborne, and E.J. Kotalik, Jr., Phoenix, for defendants-appellees.

## OPINION

CONTRERAS, Presiding Judge.

This is an appeal from the trial court's orders granting appellees' motions to dismiss. Two issues are presented for our review: (1) whether the trial court had personal jurisdiction over appellees Aramco Services Company (ASC) and Arabian-American Oil Company (Aramco), and (2) whether appellants' claim against Aramco is barred by the statute of limitations. We conclude that the trial court properly dismissed the complaint based on lack of personal jurisdiction over ASC and Aramco, and affirm the trial court's decision. Therefore, we do not decide whether the applicable statute of limitations had run as to Aramco.

Appellant Barbara Armstrong was injured on May 2, 1982, when she fell on a sidewalk in Dhahran, Saudi Arabia, while residing in Saudi Arabia with her husband, Russell Armstrong, an Aramco employee. Russell Armstrong was recruited by ASC for employment with Aramco in Saudi Arabia after answering an advertisement in a Phoenix newspaper, placed by an advertising agency under contract with ASC. On April 12, 1984, the Armstrongs filed a complaint against ASC in Maricopa County Superior Court, alleging that Mrs. Armstrong's injuries were caused by ASC's negligence in maintaining the sidewalk in Dhahran. On May 16, 1984, ASC filed a motion to dismiss the complaint, arguing that the court lacked personal jurisdiction over ASC.

On August 16, 1984, the Armstrongs filed a motion for leave to file an amended complaint, which was granted by minute entry dated September 26, 1984. The Armstrongs' first amended complaint, which named Aramco as an additional defendant, was filed on November 16, 1984. Aramco then filed a motion to dismiss the first amended complaint, based on lack of personal jurisdiction over Aramco and expiration of the applicable statute of limitations. In their respective motions to dismiss, ASC and Aramco contended that they were neither doing business nor had caused an event to occur in Arizona.

In support of their claims that they were not doing business in Arizona so as to subject themselves to the jurisdiction of the Arizona courts, ASC and Aramco relied on affidavits which established the following facts. ASC is a Delaware corporation with its principal place of business in Houston, Texas. ASC is qualified to do business in Arizona; however, it owns no facilities in Arizona, has no employees in Arizona, maintains no bank accounts, books, or records in Arizona, and has no Arizona mailing address or telephone listings. Additionally, ASC solicits no business in Arizona, owns no real or personal property located in Arizona, has no offices in Arizona, and has no goods or property stored or warehoused or on consignment in Arizona. Russell Armstrong has never been an employee of ASC, and ASC has never owned, leased, controlled, maintained, or employed any persons to maintain, any property in Dhahran, Saudi Arabia, including the sidewalk where Barbara Armstrong's injuries allegedly occurred.

Aramco is a Delaware corporation with its principal place of business in Saudi Arabia. Aramco owns no facilities in Arizona, employs no one within Arizona, maintains no bank accounts, books, or records in Arizona, and has no mailing address or telephone listings in Arizona. ASC is a wholly owned subsidiary of Aramco. ASC performs services for Aramco pursuant to a service agreement, which include personnel

recruitment and preparation for employment with Aramco. ASC and Aramco are required to pay each other for any services rendered, and to keep separate records and books. ASC and Aramco perform all services as independent contractors.

ASC has recruited Arizona residents for eventual employment with Aramco in Saudi Arabia. The contract of employment between these recruits and Aramco is not executed until certain preconditions are met, the fifth of which requires the recruit to proceed to Texas to complete the employment process. Advertisements for employment with Aramco, requiring response of the candidates to ASC, appeared in national publications available in Arizona from 1980 to 1982. Additionally, nine advertisements were placed in Arizona newspapers by an independent advertising agency under contract with ASC in 1980 and 1981.

Between January of 1978 and December of 1980, ASC transferred 11 employees to Arizona to work as part of a project management team on a project at Honeywell, Inc. in Phoenix. These employees were in Arizona on a one-time temporary basis; they did not become Arizona residents during their stay and did not generate income within Arizona. Between 1982 and 1984, ASC had contracts with 16 independent contractors who reside in Arizona, including a recruitment consultant.

The trial court granted ASC's motion to dismiss for lack of personal jurisdiction and granted Aramco's motion to dismiss based on lack of personal jurisdiction and the expiration of the statute of limitations. The Armstrongs appeal from the trial court's orders granting both motions to dismiss.

## PERSONAL JURISDICTION

On appeal, the Armstrongs argue that the trial court improperly granted ASC's and Aramco's motions to dismiss based on lack of personal jurisdiction for two reasons. First, the Armstrongs argue that another judge's ruling that Arizona courts have personal jurisdiction over ASC in a prior case, unrelated to the present action

but involving the same parties (Maricopa County Cause No. C–507541), is dispositive of the issue in this case. Second, they argue that ASC's activities in Arizona meet the "doing business" requirements of Arizona's long-arm rule and comport with due process. They contend that jurisdiction can be imputed to Aramco based on ASC's activities because ASC is Aramco's agent, or alternatively, its alter ego.

### Effect of Prior Ruling

■ The Armstrongs seem to imply that the prior ruling in C–507541 has some *res judicata* or collateral estoppel effect; however, they cite no legal authority to support this argument. The ruling in question arose out of another suit brought by the Armstrongs in Maricopa County Superior Court against ASC and Atlas Van Lines involving issues of breach of contract, breach of bailment for hire, and negligence in connection with alleged damage to the Armstrongs' personal property while in storage. Judge Voss denied ASC's motion to dismiss for lack of personal jurisdiction in that suit. For the following reasons, we reject the Armstrongs' contention that the prior ruling is dispositive.

The doctrine of *res judicata* precludes parties from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. *Bernhard v. Bank of America National Trust and Sav. Ass'n,* 19 Cal.2d 807, 809, 122 P.2d 892, 894 (1942). The rule is based upon the public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. *Id.* For a prior ruling to have *res judicata* effect, the following three factors must be present: 1) the issue decided in the prior adjudication must be identical to the one presented in the action in question; 2) the prior ruling must be a final judgment on the merits; and 3) the party against whom the plea is asserted must be a party or in privity with a party to the prior adjudication. *Spettigue v. Mahoney,* 8 Ariz.App. 281, 283, 445 P.2d 557, 559 (1968) (quoting *Bernhard,* 19 Cal.2d at 810, 122 P.2d at 895).

The case presently before us clearly does not involve relitigating a cause of action or an issue of liability that has been finally determined on the merits at trial. It is undisputed that the issues of liability in the two cases are totally unrelated. While some of the same facts and arguments may be relevant in both cases to determining whether ASC engaged in continuous and systematic business activities in Arizona, the connection between ASC's Arizona contacts and the cause of the action in each case differs. Thus, although the parties are the same, the facts relevant to a determination of jurisdiction in each case are not. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (relationship between defendant and forum must be such that it is "reasonable ... to require the corporation to defend *that particular suit* "). Additionally, the order denying ASC's motion to dismiss in the prior suit was not a final judgment on the merits. Therefore, ASC was not collaterally estopped from asserting lack of jurisdiction, and the prior ruling has no *res judicata* effect. *See Arizona Downs v. Superior Court,* 128 Ariz. 73, 76, 623 P.2d 1229, 1232 (1981).

### Relationship Between Long-Arm Rule and Due Process

■ Next, the Armstrongs argue that this case falls within Arizona's long-arm rule, Rule 4(e)(2), Arizona Rules of Civil Procedure. That rule allows Arizona courts to exercise jurisdiction over a foreign corporation doing business in the state or over one who has caused an event to occur in the state out of which the claim which is the subject of the complaint arose. To be "doing business" in Arizona for purposes of Rule 4(e)(2), the corporation must have engaged in a systematic and continuous course of conduct in the state. *Rowell Laboratories v. Superior Court,* 117 Ariz. 400, 402, 573 P.2d 91, 93 (App.1977). The plaintiff has the burden of establishing personal jurisdiction. *Chavez v. State of Ind. for Logansport State Hosp.,* 122 Ariz. 560, 562, 596 P.2d 698, 700 (1979). When a defendant challenges personal jurisdiction,

the plaintiff cannot merely rest on the bare allegations in his complaint; he must present facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir.1977). The Armstrongs contend that ASC's activities in Arizona constitute a "systematic and continuous course of business within the state," subjecting ASC to long-arm jurisdiction.

■ The last part of the Armstrongs' argument acknowledges that state court jurisdiction over foreign defendants is limited by the due process clause of the fourteenth amendment. The defendant must have sufficient contacts with the forum so that it is fair to require the defendant to defend an action in the forum. *Northern Propane Gas Co. v. Kipps,* 127 Ariz. 522, 622 P.2d 469 (1980). The Armstrongs argue that ASC's contacts with Arizona, although small in number, are qualitatively sufficient to satisfy the threshold requirements of due process.

Although a two-step jurisdictional analysis—first addressing the long-arm rule and then addressing due process—is based on established Arizona case law, *e.g., Meyers v. Hamilton Corp.,* 143 Ariz. 249, 251, 693 P.2d 904, 906 (1984); *Manufacturers' Lease Plans, Inc. v. Alverson Draughon College,* 115 Ariz. 358, 359, 565 P.2d 864, 865 (1977), in recent decisions our supreme court has avoided the first step and analyzed jurisdiction solely in terms of minimum contacts, recognizing that the two-step inquiry is redundant because the limits of our long-arm statute are co-extensive with those of the due process clause. *See Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 736 P.2d 2, (1987) (citing *Northern Propane, supra* ). Because Rule 4(e)(2) has been interpreted to extend to the permissible limits of due process, *e.g., Meyers,* 143 Ariz. at 353, 693 P.2d at 908, the defendant's conduct necessarily satisfies the rule if the constitutionally required minimum contacts are present. *Batton,* 736 P.2d at 4. Thus, the court need only inquire whether the assertion of

jurisdiction would be constitutionally permissible. Accordingly, we limit our analysis in this case to whether the Arizona court may constitutionally assert jurisdiction over ASC and Aramco.

### Specific or General Jurisdiction

The due process clause protects individuals from being subject to binding judgments of forums with which they have established no meaningful "contacts, ties, or relations" by requiring that they have "fair warning" that a particular activity may subject them to a foreign court's jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Depending on the type and extent of the defendant's contacts, a state may assert either specific or general jurisdiction. *See Batton*, 736 P.2d at 4. The Armstrongs contend that both types of jurisdiction may be properly asserted in this case.

### Specific Jurisdiction

Specific jurisdiction is limited to suits arising out of or related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412, 104 S.Ct. 1868, 1871, 80 L.Ed. 2d 404 (1984). The minimum contacts inquiry focuses on the relationship between the defendant, the forum, and the litigation; the specific conduct being litigated must establish the necessary minimum contacts between the defendant and the state. *Batton*, 736 P.2d at 5 (citing *Burger King*, 471 U.S. at 471–474, 105 S.Ct. at 2181–2183 (1985)). The "fair warning" requirement is satisfied for purposes of asserting specific jurisdiction if the defendant has "purposefully directed" its activities at residents of the forum *and* the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182. Federal courts have applied the following three-part test

in determining whether such specific jurisdiction comports with due process: (1) the nonresident defendant must do some act or consummate some transaction within the forum; (2) the claim must arise out of or result from the defendant's activities in the forum; and (3) exercising jurisdiction must be reasonable. *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784 (9th Cir.1977).[1]

The Armstrongs assert that the underlying personal injury action in this case arises out of appellees' recruiting activities within the forum because Barbara Armstrong would not have been injured had ASC not recruited Russell Armstrong in Arizona for employment with Aramco in Saudi Arabia. We disagree. To support their position that specific jurisdiction is appropriate, the Armstrongs rely on Judge Voss' ruling in Maricopa County Cause No. C–507541 that the claim in that matter arose out of ASC's activity in Arizona. As previously discussed, that ruling is neither dispositive nor persuasive as to the issue of specific jurisdiction in this case because in the earlier suit, ASC's act of recruiting Russell Armstrong in Arizona and arranging for shipment and storage of his belongings had a much closer nexus to the conduct being litigated: the alleged damage to those belongings while in storage. *Compare, e.g., Hahn v. Vermont Law School*, 698 F.2d 48 (1st Cir.1983) ("arising from" requirement satisfied when cause of action is for alleged breach of contract and business transacted in state—mailing plaintiff offer of admission—was instrumental in formation of contract) with *Marino v. Hyatt Corp.*, 793 F.2d 427 (1st Cir.1986) (hotel guest's action against owner who regularly advertised and solicited business in Massachusetts for injuries received in Hawaii hotel room did not "arise from" her reservation of the room in Massachusetts). In the present case, any connection between the recruitment of Russell Armstrong in Arizona and appellees' alleged

---

1. Recent Supreme Court decisions have resulted in slight modifications of this test not pertinent here. *See, e.g., Burger King, supra.* Because we conclude that the claim in this case did not arise out of or result from the defendant's activities in the forum, we do not separately address the other elements of the test.

negligence in maintaining the sidewalk in Saudi Arabia upon which Barbara Armstrong fell is too attenuated to meet the "arising from" requirement for exercising specific jurisdiction.

*General Jurisdiction*

We now address whether Arizona may constitutionally assert general jurisdiction over appellees. When the claim does not arise out of the nonresident defendant's forum activities, assertion of jurisdiction is constitutionally permissible only if the defendant's business contacts within the state are "substantial" or "continuous and systematic." *Maake v. L & J Press Corp.*, 147 Ariz. 362, 710 P.2d 472 (App.1985) (citing *Helicopteros*, 466 U.S. at 412, 104 S.Ct. at 1871). Absent the threshold due process requirement of sufficient contacts, ties or relations with the forum, the state cannot exercise jurisdiction despite an interest or inconvenience to the parties. *Northern Propane*, 127 Ariz. at 527, 622 P.2d at 474. Thus, for general jurisdiction to lie, the defendant must have conducted continuous and systematic business in the state *and* have sufficient minimum contacts with the forum such that exercising jurisdiction does not offend traditional notions of fair play and substantial justice. *See International Shoe Co., supra.*

The Armstrongs argue that ASC was engaged in a systematic and continuous course of business in Arizona based on the following activities: (1) recruiting and arranging for employment of Arizona residents with Aramco; (2) assigning ASC employees to work at Honeywell in Phoenix on a one-time, temporary basis; (3) entering into contracts with Arizona contractors; (4) placing purchase orders with Arizona vendors; and (5) filing for authority to do business as a foreign corporation in Arizona since 1977. Appellees point out that these activities are both sporadic and insignificant when viewed in the context of ASC's overall corporate activity, and that most of the activities are simply the unilateral acts of independent contractors. We agree with appellees that these activities do not constitute a systematic, continous course of business within the state, and we

find ASC's Arizona contacts insufficient to permit the exercise of general jurisdiction consistent with the due process clause.

ASC's assignment of employees to Honeywell, contracts with Arizona consultants, and purchase orders with Arizona vendors are neither "substantial" nor "continuous and systematic" activities. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (mere purchases, even if occurring at regular intervals, do not justify a state's assertion of jurisdiction over a nonresident corporation in a cause of action not related to those purchases; personnel sent into forum for training in no way enhanced nature of corporation's contacts with state).

The Armstrongs argue that the services provided for Aramco by ASC in Arizona constitute a systematic and continuous course of business within the state. We disagree. The Armstrongs have not come forward with any evidence that services ASC provided to Arizona residents employed by Aramco were performed within this state. To the contrary, the record indicates that ASC performed services for Aramco as specified in the agreement from and in its principal place of business in Houston, Texas.

The Armstrongs seem to imply that jurisdiction can be based on the performance of such services as contracting for moving Aramco employees and their families to the Middle East, making travel arrangements and developing banking services for Aramco employees, simply because they were done for employees recruited from Arizona. However, we are not persuaded that ASC's recruiting activities here were systematic and continuous. First, the fact that advertisements were placed by ASC in national publications which were circulated in Arizona does not imply that ASC was doing business in Arizona. *See San Antonio Telephone Co. v. American Telephone and Telegraph*, 499 F.2d 349, 351 n. 5 (5th Cir.1974). Second, advertisements in Arizona newspapers were placed by an independent Arizona advertising agency under contract with ASC and were placed only

intermittently; only nine advertisements appeared in local newspapers over the entire four year period covered by ASC's contract with the advertising agency.

The Armstrongs argue in their reply brief that even if the advertisements were not placed by ASC, they are still attributable to ASC because a foreign corporation may conduct business through the use of an agent, citing *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406 (9th Cir.1977). Dicta in that case suggests that an independent, local corporation may be held to have acted as an agent for a foreign corporation in performing activities giving rise to a cause of action, so as to subject the foreign corporation to long-arm jurisdiction. *Id.* at 419. The Armstrongs have not established that the requisite "agency" control existed in the relationship between ASC and the Arizona advertising agency, nor have they established that the agency's activities gave rise to the cause of action. However, even if the local advertising could be attributed to ASC, we conclude that it was too sporadic and insignificant to constitute "systematic and continuous" business activity in Arizona. We note that advertisements were not placed on any regular basis, that the hiring process was completed in Texas, and that out of 1,648 individuals recruited by ASC for employment with Aramco between 1982 and 1984, only 1.57 percent were recruited from Arizona.

The Armstrongs also argue that general jurisdiction is appropriate because an employment contract made within the state constitutes "an act of doing business" in that state even if the contract is technically consummated elsewhere, citing *Frank E. Basil, Inc. v. Industrial Comm'n,* 130 Ariz. 172, 634 P.2d 984 (App.1981). We are not persuaded that *Basil* is applicable here. *Basil* turns on the connection between the claim and the defendant's forum activity and does not involve the issue of whether the defendant conducted "substantial" or "continuous and systematic" business contacts in Arizona. In *Basil,* this court held that in the context of a workers' compensation statute extending coverage to workers hired in Arizona but injured outside the state, the hiring in Arizona of an Arizona resident constitutes minimum contact justifying jurisdiction by the Industrial Commission over the nonresident employer. Even assuming Russell Armstrong was "hired" in Arizona, which has not been established, the analogy between this case and the workers' compensation cases is too limited to predicate jurisdiction upon ASC's recruiting activity. The court in *Basil* relied on a specific Arizona statute providing "plain notice" that the hiring of an employee in Arizona can lead to a workers' compensation action if a work-related injury occurs. In this case, Barbara Armstrong was not employed by either ASC or Aramco, so her injury was not work-related and, unlike the employee's claim in *Basil,* did not arise from an employment relationship. There is a much closer nexus between employment and an employment-related injury than between employment and an injury to a member of the employee's family. Therefore, *Basil* does not provide authority for assertion of general jurisdiction over ASC.

The Armstrongs concede that the number of contacts ASC had with Arizona appears relatively small. However, they urge us to discount this fact because the determination of jurisdiction depends upon the quality, not the quantity of the defendant's contacts, citing *Asahi Metal Industry Co. v. Superior Court,* 39 Cal.3d 35, 702 P.2d 543, 216 Cal.Rptr. 385 (1985), *rev'd,* —— U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ("minimum contacts test is not 'mechanical or quantitive,' but depends upon the 'quality and nature' of the defendant's contacts"). They emphasize that the California Supreme Court in *Asahi* upheld the assertion of long-arm jurisdiction over a Japanese manufacturer of valve assemblies, although its sales to California companies represented only a small percentage of its gross income, because of the significant number of tubes with Asahi valve assemblies sold in the state. We note that the United States Supreme Court has reversed the California Supreme Court's decision in *Asahi,* and held that the California court's exercise of personal jurisdiction over the Japanese company is unreasonable

and violates the due process clause. Additionally, we note that the Armstrongs offered no evidence concerning the relative size of ASC's Arizona recruiting activity as compared to any segment of Arizona's population or economy, and thus have not shown ASC's recruiting activity here to be significant or substantial. Therefore, this argument is without merit.

Finally, the Armstrongs argue that ASC's authorization to do business in Arizona pursuant to A.R.S. § 10–106 warrants the exercise of personal jurisdiction over it. Again, we disagree. Mere qualification of a company to do business in Arizona does not of itself confer jurisdiction, nor does the fact that a company has an office in Arizona and has designated a statutory agent in the state. *Van Denburgh v. Tungsten Reef Mines Co.*, 48 Ariz. 540, 548–549, 63 P.2d 647, 655 (1936). A corporation could conceivably file for authorization to do business in any number of states as a formality or convenience without ever conducting any business in those states. The determination of jurisdiction is based on the *nature* and *quality* of the defendant's activities in the state. Being licensed to do business is a factor to consider in weighing the defendant's contacts with the state, but it in no way obviates the requirement that a nonresident corporate defendant have *conducted* substantial or systematic and continuous business activities in the state. In this case, the Armstrongs have not shown that ASC has ever done business *in* Arizona. ASC's principal place of business is in Texas; it owns no property in Arizona, nor does it have a mailing address, an office, or any other direct contact with Arizona. We therefore conclude that the Armstrongs have not met their burden of establishing that ASC's activities in Arizona satisfy this requirement.

Assertion of personal jurisdiction over Aramco is dependent on the relationship between Aramco and ASC. Because we conclude that the Arizona court does not have personal jurisdiction over ASC, it necessarily follows that there is no personal jurisdiction over Aramco. Accordingly, we need not decide whether jurisdiction over ASC may be imputed to Aramco under the doctrine of agency or alter ego.

For the foregoing reasons, the decision of the trial court is affirmed.

BROOKS, J., and STRICK, J. Pro Tem.,[*] concur.