NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BROWNCO OF AZ, LLC, et al., *Plaintiffs/Appellants*,

*v.*

PAUL SCHILK, *Defendant/Appellee*.

No. 1 CA-CV 24-0351

FILED 11-26-2024

Appeal from the Superior Court in Maricopa County
No.  CV2022-051095
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

COUNSEL

Jaburg & Wilk PC, Phoenix, AZ
By Maria Crimi Speth
*Counsel for Plaintiffs/Appellants*

Paul Schilk, Harrison Township, MI
*Defendant/Appellee*

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which
Presiding Judge Cynthia J. Bailey and Judge Anni Hill Foster joined.

**P A T O N**, Judge:

¶1        Brownco of AZ, LLC ("Brownco"), Jonali Marketing, LLC ("Jonali"), Joel Brown ("Joel"), and Graham Brown (individually "Graham") (collectively "Plaintiffs") appeal the dismissal of their claims against Paul Schilk based on lack of personal jurisdiction.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

¶2        Joel, the principal of e-printwerx International, LLC, invented a software application to integrate mailing lists.  E-printwerx is an Arizona company.

¶3        Splash360, Inc. was a Michigan corporation that helped companies with email automation.  Robert Stadwick was the principal of Splash360.  In 2011, Splash360 approached e-printwerx to license the software application for use on the Splash360 platform.

¶4        Marketing Cloud Services, Inc. ("MCS") is a Michigan company that was formed in 2018 to market multiple products, including those of Splash360.  Schilk, who is a Michigan resident, invested in Splash360 and MCS.[2]  MCS acquired Splash360 in August 2019.

¶5        By 2020, e-printwerx and MCS d/b/a Splash360 had signed an agreement under which the two companies began discussing working together to improve the Splash360 platform and split the net income.  In late 2020, Plaintiffs, Stadwick, and MCS d/b/a Splash360 agreed to form a new entity that would be called Sales Garden.  Plaintiffs and Stadwick agreed that the new entity would own all the Splash360 software code and other intellectual property related to Splash360.

¶6        In February 2021, Sales Garden, LLC was formed as an Arizona limited liability company.  Brownco, Jonali, Joel, and MCS d/b/a Splash360 are owners of Sales Garden, LLC.  Graham is an owner of Brownco, which is also an Arizona company.

---

[1] For purposes of this appeal, we rely on facts as alleged in the third amended complaint for background information but analyze the facts introduced in evidence in our analysis of personal jurisdiction.

[2] Schilk testified at the evidentiary hearing that he invested in Splash360 and was told the "ownership would transfer over" to MCS.

¶7          By March 2021, the members of Sales Garden had exchanged drafts of an operating agreement and intellectual property transfer agreement, in which MCS d/b/a Splash360 would agree to assign all its software, hardware, copyrights, and intellectual property to Sales Garden.

¶8          The relationship among the various entities and individuals became contentious, and in January 2022, Stadwick sent an email to Graham requesting money from e-printwerx and threatening to terminate all operations of Sales Garden and the Sales Garden partnership if his demands were not met. Stadwick copied Schilk on that email. Stadwick advised third-party vendors that Sales Garden had no contractual rights to the software application, instructed individuals to halt development on the project, and deleted his work product from a shared Google drive. At the end of January 2022, Brownco members, Jonali, Joel, and MCS d/b/a Splash360 signed the operating agreement and intellectual property transfer agreement.

¶9          The relationships deteriorated further, and in April 2022, Plaintiffs sued Stadwick, Schilk, and others alleging that Stadwick extorted money from the other Sales Garden owners and sabotaged Sales Garden. In their third amended complaint, Plaintiffs alleged that Schilk engaged in civil conspiracy, aiding and abetting, unfair competition, and fraud and violated a preliminary injunction the parties had stipulated to in May 2022.

¶10          Schilk moved to dismiss for lack of personal jurisdiction. The superior court conducted an evidentiary hearing addressing personal jurisdiction and heard testimony from Schilk and Graham.[3]

¶11          After analyzing whether Schilk's activities directed at Arizona met specific-jurisdiction requirements, the superior court granted Schilk's motion to dismiss for lack of personal jurisdiction. The court also denied Plaintiffs' motion for an adverse inference related to document production or for delayed ruling pending production. The court entered partial final judgment, and this appeal followed.

¶12          We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1).

---

[3] Other plaintiffs testified at the hearing but did not provide information relevant to personal jurisdiction.

## DISCUSSION

### I. The superior court did not have personal jurisdiction over Schilk.

¶13      Plaintiffs argue the superior court erred in granting Schilk's motion to dismiss for lack of personal jurisdiction—a ruling we review de novo. *Duckstein v. Wolf*, 230 Ariz. 227, 233, ¶ 19 (App. 2012).

¶14      Personal jurisdiction is based on either general or specific jurisdiction. *Wal-Mart Stores, Inc. v. LeMaire*, 242 Ariz. 357, 359, ¶ 4 (App. 2017). Because Plaintiffs do not argue that Schilk is subject to general jurisdiction in Arizona, we confine our analysis to specific jurisdiction. *See In re Marriage of Peck*, 242 Ariz. 345, 348, ¶ 8 (App. 2017). The superior court may exercise specific jurisdiction over a defendant if he purposefully availed himself of the "privilege of conducting activities in the forum," the "claim arises out of the defendant's forum-related activities," and "the exercise of jurisdiction is reasonable." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990), *reversed on other grounds*, 499 U.S. 585 (1991) (cleaned up); *Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 417, ¶ 9 (App. 2013). The central inquiry focuses on the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). This nexus requirement among the defendant, the forum, and the litigation is "the key to exercising specific jurisdiction." *Williams v. Lakeview Co.*, 199 Ariz. 1, 4, ¶ 11 (2000).

¶15      The specific-jurisdiction inquiry is focused on a defendant's "purposeful conduct" directed to the state. *Plan. Grp. of Scottsdale, L.L.C. v. Lake Mathews Min. Prop's., Ltd.*, 226 Ariz. 262, 266-68, ¶¶ 18-25 (2011) (rejecting the distinction between the "purposeful availment" test and the "purposeful direction" test). "Jurisdiction is proper only if the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum state." *Batton v. Tennessee Farmers Mut. Ins. Co.*, 153 Ariz. 268, 271 (1987) (cleaned up). The failure to show a causal connection between a defendant's Arizona activity and a plaintiff's claim is "fatal" to the exercise of specific jurisdiction. *Williams*, 199 Ariz. at 4-5, ¶ 13. A plaintiff bears the burden of making a prima-facie showing of jurisdiction. *See A. Uberti and C. v. Leonardo*, 181 Ariz. 565, 569 (1995) (noting the non-moving party must make a prima facie jurisdictional showing); *Macpherson v. Taglione*, 158 Ariz. 309, 311-12 (App. 1988).

¶16      Here, there is insufficient evidence in the record satisfying the nexus requirement to establish personal jurisdiction over Schilk. At the evidentiary hearing, Graham asserted broadly that MCS, in which Schilk

was a shareholder, destroyed Brownco's property via shared ownership in Sales Garden. He testified that Schilk's role in MCS was as a "director, a co-owner, a shareholder" and a "confidante of Robert Stadwick."[4] Graham also testified that Schilk was involved in the negotiations to form Sales Garden. He stated that Schilk knew Sales Garden was an Arizona business. He testified that Schilk asked for and used a Sales Garden email address, the footer of which identified Schilk as a member of "Team Sales Garden" and listed an address in Arizona. Graham testified that Schilk also had access to Sales Garden Google documents, which were the "crown jewels" of the business. The record shows Schilk described Graham in an email as "not ethical," hypothesized that Graham would "continue to cheat us," and asked a third-party how to change a payment gateway for a software account.[5] But even if all these activities are true, none of them relate to the asserted causes of action against Schilk for civil conspiracy, aiding and abetting, unfair competition, fraud, and violation of the preliminary injunction. *Plan. Grp.*, 226 Ariz. at 266, ¶ 16.

¶17        The record also contains evidence that Stadwick copied Schilk on the email Graham believes to have been blackmail. But jurisdiction cannot be based on the activities of third parties; instead, jurisdiction must be based on the defendant's actions directed at the forum state. *See Smith & Wesson Corp. v. The Wuster*, 243 Ariz. 355, 359, ¶ 19 (App. 2017).

¶18        The only specific factual allegations against Schilk in the third amended complaint pertain to (1) Schilk emailing Graham in May 2021 and seeking reimbursement for Splash360 monthly charges that he requested Sales Garden absorb going forward, (2) Schilk and Stadwick working with another defendant to enable that defendant's companies to continue to use the Splash360 platform directly through Stadwick in circumvention of agreements with Plaintiffs, and (3) Schilk asking Graham in October 2021 to move the Sales Garden domain name into an account that was separate from other domain names.

¶19        Plaintiffs argue that because Schilk failed to controvert allegations one and two, the superior court should have taken those allegations as true, citing *Scott v. Kemp*, 248 Ariz. 380, 386, ¶ 13 (App. 2020)

---

[4] Schilk denied being a board member of either Splash360 or MCS and denied he was an officer of MCS.

[5] The parties did not testify about the relevance of the software account, and Schilk testified that he must have switched topics in the email from his unhappiness with Graham to a work-related issue.

(quoting from *Boschetto v. Hansing*, 529 F.3d 1011, 1015 (9th Cir. 2008) that "[u]ncontroverted allegations in the plaintiff's complaint must be taken as true."). But a plaintiff cannot rely solely on the allegations in their complaint and must submit facts demonstrating personal jurisdiction. *Armstrong v. Aramco Servs. Co.*, 155 Ariz. 345, 348 (App. 1987); *see also Macpherson*, 158 Ariz. at 311-12. Courts may consider "affidavits, depositions, and exhibits and conduct an evidentiary hearing if necessary" when analyzing a motion to dismiss for lack of personal jurisdiction. *Gatecliff v. Great Republic Life Ins. Co.*, 154 Ariz. 502, 506 (App. 1987).

**¶20** Schilk denied that he directed or caused any actions to take place in Arizona and denied purposely engaging in activities in the state, such as conducting business, entering contracts, or intentionally targeting the state's residents. And the parties provided no testimony or any other evidence about any of these three specific factual allegations. But in his opening statement, Schilk argued that in May 2021, he informed Plaintiffs about using his personal credit card for Splash360 expenses intended to be attributed to Sales Garden per the operating agreement. He argued that those were company expenses and not his personal obligation and that any damages pertained to the company, not Plaintiffs.

**¶21** Plaintiffs argue that Schilk's "direct participation in the affairs of Sales Garden, and his participation through his ownership in MCS constitutes sufficient purposeful" conduct such that the superior court can exercise personal jurisdiction over Schilk, citing *Scott*, 248 Ariz. at 385-88. In *Scott*, this court found the superior court could exercise personal jurisdiction over individual defendants who were the owner and management partners of entities involved in personal-injury claims alleged to have occurred in Arizona skilled-nursing and long-term care facilities. *Id.* at 383, ¶ 1, at 384-85, ¶¶ 4-7, at 392, ¶ 41. We addressed the ownership interests of the various individuals and entities. *Id.* at 384-85, ¶¶ 4-7. But the purposeful conduct sufficient to exercise personal jurisdiction included the managers signing to renew the license of an Arizona facility, the state requirement that the applicant list all partners to obtain a state permit, submitting annual federal Medicare cost reports for the Arizona facility, preparing and certifying reports for the Arizona facility, contracting to provide proper and adequate care in Arizona, and managing entities created to provide services to Arizona residents. *Id.* at 389-90, ¶¶ 26-34. *Scott* does not stand for the blanket proposition that ownership or investment in an entity that in turn invests in an Arizona entity is sufficient to exercise personal jurisdiction.

¶22 Plaintiffs' conclusory allegations in the third amended complaint cannot support the exercise of specific jurisdiction. *See Armstrong*, 155 Ariz. at 348; *Macpherson*, 158 Ariz. at 311-12. Plaintiffs failed to meet their burden of showing a nexus among Schilk, Arizona, and the litigation.

**II.    The superior court did not err in denying Plaintiffs' motion for adverse inference or delayed ruling.**

¶23 Plaintiffs argue the superior court erred in denying their motion for an adverse inference pursuant to Arizona Rule of Civil Procedure ("Rule") 37 or for delayed ruling on personal jurisdiction. The motion was related to document production requested of Stadwick[6] and Schilk. We review the denial of a Rule 37 motion for abuse of discretion. *See Takieh v. O'Meara*, 252 Ariz. 51, 61, ¶ 34 (App. 2021).

¶24 Plaintiffs requested bank statements from Schilk and signatory cards for the Splash360 and MCS bank accounts. Plaintiffs argued that the bank statements for the Splash360 account would show what Schilk and Stadwick did with money that Graham wired to Splash360 from the Sales Garden account and whether Schilk and Stadwick were diverting monthly subscriptions away from Sales Garden. Schilk responded that the information sought was not reasonably calculated to lead to admissible evidence. The record shows that Sales Garden was not even formed until 2021, so any bank documents from Splash360—which MCS acquired in 2019 and Schilk testified dissolved in 2020—would have no relevance.

¶25 As for documents requested related to the MCS bank account, Plaintiffs sought documents showing the signatories on the account, arguing those documents would show the extent to which Schilk had control over the accounts. Schilk claimed that he was not authorized to produce the documents. At the evidentiary hearing, Schilk testified that although his name was on the account for mailing purposes, he was not authorized to produce those records because he is not an officer of MCS and stated that the official address for the bank account is Stadwick's corporate attorney.

¶26 Plaintiffs argue the superior court erred in denying their request for an adverse inference because Rule 37(c) permits the court to

---

[6] Any failure by Stadwick to produce documents does not impact the analysis of the superior court's personal jurisdiction over Schilk.

impose the sanction provided in Rule 37(g)(2)(B) of a presumption that lost electronically-stored information was unfavorable to a party. But Rule 37(g)(2)(B) requires the court to find that a party acted with the intent to deprive another party of the information's use in litigation. The court made no such finding here and the record contains no evidence of intent of deprivation. Schilk did not claim that he lost the requested electronically-stored information. The superior court did not abuse its discretion in denying the motion for adverse inference or the alternative request to delay ruling on the motion to dismiss for lack of personal jurisdiction.

## CONCLUSION

**¶27** For the foregoing reasons, we affirm the superior court's ruling. We award costs to Schilk upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV