165 P.3d 186

**Maxine BOHREER; Tricia King; Northern Virginia Funeral Choices, Inc., a foreign corporation, Plaintiffs–Appellants,**

v.

**ERIE INSURANCE EXCHANGE, a foreign corporation, Defendant–Appellee.**

**No. 1 CA–CV 06–0277.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 16, 2007.

Page & Hommel, L.L.P. By James R. Page, Scottsdale, The Vakula Law Firm, P.C. By Thomas A. Germuska, Jr., Phoenix, Attorneys for Plaintiffs–Appellants.

Cavanagh Law Firm, P.A. By Frank M. Fox, Thomas C. Hall, Christopher Robbins, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

KESSLER, Judge.

¶ 1 This case presents the question whether Arizona has general personal jurisdiction over a foreign corporation which, at the time of the events leading to a lawsuit, had ceased doing business in Arizona, but had not withdrawn its appointment of the Director of Insurance ("Director") as an agent for service of process until after it had been served with the complaint. We hold Arizona has general personal jurisdiction of the defendant pursuant to Arizona Revised Statutes ("A.R.S.") section 20–221(A) (2002) and the exercise of such jurisdiction comports with due process under *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917), and its progeny. We re-

verse the order dismissing this action for lack of personal jurisdiction and remand for further proceedings consistent with this decision.

## FACTUAL AND PROCEDURAL HISTORY[1]

¶2 In July 2005, Maxine Bohreer ("Bohreer"), Tricia King ("King") and Northern Virginia Funeral Choices, Inc. ("NVFC"), (collectively "Plaintiffs") filed this action against Erie Insurance Exchange ("Erie"), a reciprocal insurance exchange organized under Pennsylvania law and related insurance companies. The complaint alleged that in 2002, Bohreer and King had sued Anatomic Gift Foundation and NVFC in Maricopa County Superior Court alleging that NVFC, incorporated and located in Virginia, had cremated Marion Jay Bohreer without written consent of Maxine Bohreer and shipped the remains to Bohreer labeled as "Family Pet Cremations". The cremains were either not those of Marion Bohreer or were commingled with an animal's cremains. The complaint further alleged that Erie had issued a commercial liability insurance policy to NVFC which insured for the alleged misconduct, and that in November 2002 Erie had denied coverage to NVFC, leading to NVFC's bankruptcy. NVFC, Bohreer and King entered into a *Damron* agreement, by which NVFC agreed to entry of a judgment against it and assigned all of its rights against Erie to Bohreer and King.[2] The bankruptcy court approved the agreement and a judgment based thereon was entered. Bohreer, King and NVFC then brought this action against Erie alleging breach of an insurance contract, breach of the covenant for good faith and fair dealing, and bad faith. Bohreer and King asked the court to reform the insurance contract, declare that the policy covered the conduct on which the judgment was based and award them compensatory and punitive damages.

¶3 Erie moved to dismiss for lack of personal jurisdiction. Erie conceded it had at one time done business in Arizona and it had previously designated the Director as its authorized agent for purposes of service of process. Erie argued that it had ceased doing business in Arizona in 2001 and had received its last premium from Arizona in 2001. It argued that since its alleged acts leading to the complaint occurred in late November 2002, Arizona lacked personal jurisdiction over it because by November 2002 it had no contacts with the State, was not doing business in Arizona and its consent to jurisdiction by appointing a statutory agent became ineffective when it ceased doing business in the state.

¶4 Plaintiffs responded, in part, that pursuant to statute, Erie had consented to jurisdiction for all purposes by irrevocably appointing the Department as its agent for service of process. They attached Erie's 1997 power of attorney appointing the Director for service of process and what they contended was an August 30, 2005, printout from the Department of Insurance's records showing Erie was still authorized to do business in Arizona.

¶5 Erie responded with an affidavit from one of its officers, Margaret A. Porter. The Porter affidavit explained that as an accredited reinsurer, it last received a premium from an Arizona entity in March, 2001. The affidavit confirmed Erie never maintained an office in Arizona, never had employees or officers here and had no property or other

---

1. On appeal from an order on a motion to dismiss a complaint for lack of personal jurisdiction, we view the facts in the light most favorable to the non-moving party. *A. Uberti & C. v. Leonardo,* 181 Ariz. 565, 566, 892 P.2d 1354, 1355 (1995). The nature of our review is not altered by the parties having filed documents outside of the complaint and the superior court having appeared to consider those documents in its ruling. *Sanchez v. City of Tucson,* 191 Ariz. 128, 130, ¶7, 953 P.2d 168, 170 (1998) (evidence of party opposing summary judgment is to be believed and all justifiable inferences are to be drawn it

its favor; appellate review is de novo); *Bonner v. Minico, Inc.,* 159 Ariz. 246, 254, 766 P.2d 598, 606 (1988) (principles of summary judgment apply to factual issues affecting jurisdiction); *Smith v. CIGNA HealthPlan of Arizona,* 203 Ariz. 173, 176, ¶8, 52 P.3d 205, 208 (App.2002) (court's consideration of matters outside of complaint converts motion to dismiss to motion for summary judgment).

2. *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969).

assets in the state. Finally, Porter averred Erie had withdrawn from Arizona as an accredited reinsurer on September 23, 2005. Such withdrawal was approximately two months after the complaint in this action had been filed and served on the Director. Erie did not contest that the print-out from the Department showed that as of August 30, 2005, it was still authorized to do business in Arizona. Erie argued that it had not consented to personal jurisdiction in this case because it had ceased doing business in Arizona in 2001.

¶ 6 The superior court granted Erie's motion, concluding, inter alia, that Erie had ceased doing business in Arizona in March 2001 and had not consented to jurisdiction. It accordingly entered a judgment pursuant to Arizona Rule of Civil Procedure 54(b) dismissing the case against Erie and awarding Erie attorneys' fees. Plaintiffs timely appealed. This Court has jurisdiction pursuant to A.R.S. section 12–2101(B) (2003).

### DISCUSSION

¶ 7 We review a dismissal based upon lack of personal jurisdiction *de novo*. *Uberti*, 181 Ariz. at 569, 892 P.2d at 1358. To avoid dismissal, the non-moving party need only make a prima facie showing of jurisdiction. *Id.* In this context, a prima facie case means sufficient evidence to avoid a directed verdict. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Evidence is sufficient to withstand a motion for directed verdict if, taken in a light most favorable to the non-moving party, there is any probative evidence in the record to support an ultimate verdict. *Shoen v.*

*Shoen*, 191 Ariz. 64, 65, 952 P.2d 302, 303 (App.1997).

¶ 8 Plaintiffs argue that by filing an affidavit irrevocably appointing the Director as an agent for service of process, Erie expressly consented to general personal jurisdiction and its alleged ceasing to do business in Arizona does not serve, without more, as a revocation of such consent. They also contend that such consent is sufficient to find general personal jurisdiction without any minimum contacts analysis.[3] Erie contends that once it ceased receiving premiums in Arizona, its appointment of the Director ended. It also contends that given its lack of contacts with Arizona after it ceased receiving premiums, any assertion of general personal jurisdiction would violate due process principles.

¶ 9 In resolving this jurisdictional dispute, we must address two separate issues: (1) The extent of Erie's consent to jurisdiction by appointment of the Director and whether such consent was still in place at the time of Erie's underlying acts in 2002; and (2) If the consent was still in effect, whether an exercise of general personal jurisdiction is constitutional under due process analysis.

### *Effect of the Appointment*

¶ 10 We conclude that Erie's appointment of the Director was in effect until after the suit was filed and served, and was a consent to general jurisdiction over Erie.[4]

¶ 11 Arizona's registration statute provides for an irrevocable appointment of the director of insurance for service of process which remains in effect "as long as there is in force in this state any contract made by the insurer or obligations arising therefrom." A.R.S. § 20–221(A).[5] Erie's power of attor-

3. Plaintiffs cannot successfully rely upon Arizona's long-arm provision, which confers personal jurisdiction over non-resident defendants to the fullest extent permitted by the federal due process clause. Ariz. R. Civ. P. 4.2(a). That expansive concept is irrelevant to the issue of express consent. *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir.1990) (explaining that jurisdiction by consent exists independent of long-arm statute). Accordingly, we need not address issues of specific or general personal jurisdiction under that statute. *See Armstrong v. Aramco Services Co.*, 155 Ariz. 345, 352, 746 P.2d 917, 924 (App.1987) (when person-

al jurisdiction is sought to be exercised under a long-arm statute, appointment of a statutory agent, by itself, is not dispositive and other minimum contacts must be found to exercise general jurisdiction).

4. Accordingly, we do not address whether personal jurisdiction would exist if Erie had tried to terminate its consent prior to the events which led to this action.

5. Section 20–221(A) provides:
 Each authorized foreign or alien insurer shall appoint the director as its attorney to receive

ney is different than the statute, providing the appointment:

shall continue so long as any of its liability remains outstanding in said State, and that its removal from said State or dissolution shall not take away or impair the right to commence any action or legal proceeding against it, in the manner herein provided, upon a liability previously incurred.

Service on the director is the only way to serve a foreign insurer and is just as effective as if there was personal service on the insurer within the state. A.R.S. § 20–221(B); Ariz. R. Civ. P. 4.2(a).

¶ 12 As written, Erie's irrevocable power of attorney has two key elements. First, it provides the appointment shall remain in effect "so long as any of its liability remains outstanding" in Arizona. Second, it provides that even if it removes from Arizona, the appointment "shall not . . . impair the right to commence any action . . . against it, in the manner herein provided, upon a liability previously incurred."

¶ 13 We conclude that the appointment remained in effect after Erie stopped receiving premiums from Arizona. The appointment did not state it would cease once Erie stopped receiving premiums or stopped doing business in Arizona. Rather, it expressly continued if any of Erie's "liability remain[ed] outstanding" in Arizona. Erie had outstanding liability, albeit potential, after it stopped receiving premiums in Arizona. That liability could be this lawsuit or could be on any policy of reinsurance it had issued whether the liability had already been incurred or was simply potential in nature. See A.R.S. § 20–221(A) (appointment would be "in effect as long as there is in force in this state any contract made by the insurer . . ."). Given these facts, Plaintiffs met their prima facie burden of personal jurisdiction.

¶ 14 The second aspect of the appointment, that if Erie removed from Arizona, suit could be brought against it in Arizona "upon a liability previously incurred," does not affect our conclusion. This second aspect could be

read as providing that the facts giving rise to liability must have already occurred for the appointment to still be in effect. Alternatively, it could be read as applying only if Erie ceased having authority ("removed") to do business in Arizona. Erie, however, was still authorized to do business in Arizona even after the complaint was served.

¶ 15 We find support for our conclusion in *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991). In *Bane*, the plaintiff was a Netlink employee working in Boston. 925 F.2d at 638. After Netlink asked him to relocate to Pennsylvania to open an office there, but before he moved, Netlink fired him. *Id.* Bane brought an age discrimination claim against Netlink in the United States District Court in Philadelphia. *Id.* Netlink moved to dismiss the action for lack of personal jurisdiction. *Id.* In that motion, it showed it had no offices, property or employees in Pennsylvania, did not pay taxes to or advertise in the state and only had employees occasionally travel to the state on business. *Id.* at 638–39. Netlink also stated, however, that prior to the termination of Bane, it had obtained authorization to do business in Pennsylvania, but had also ceased doing business in the state. *Id.* at 639. It had, however, not withdrawn its authorization to conduct business in the state until after it had fired Bane. *Id.* at 639. The District Court granted the motion to dismiss. *Id.*

¶ 16 In reversing, the Third Circuit Court of Appeals found that general jurisdiction existed over Netlink under Pennsylvania's authorization to do business laws. *Id.* at 639–41. The statute provided that general personal jurisdiction would exist if the corporation qualified as a foreign corporation or consented to jurisdiction. *Id.* at 640. By obtaining authorization to do business in the state, Netlink was required to and had designated the secretary of the state as an attorney for service of process. *Id.* Thus, not only had Netlink purposefully availed itself of the privilege of doing business in the state for purposes of general jurisdiction, but had

---

service of legal process issued against it in this state. The appointment shall be irrevocable, shall bind any successor in interest or to the assets or liabilities of the insurer and shall re-

main in effect as long as there is in force in this state any contract made by the insurer or obligations arising therefrom.

consented to such jurisdiction by so doing. *Id.* at 640–41. Finally, the court held the fact Netlink had withdrawn its authorization to do business in the state before the suit was filed was of no consequence. *Id.* at 640. This was because the statute in existence at the time Netlink obtained authorization provided that the appointment "shall continue in force as long as any liability remains outstanding against the corporation in this Commonwealth" and the successor statute provided that discontinuance of such qualification "shall not affect jurisdiction with respect to any act, transaction or omission occurring during the period such status existed." *Id.* at 640. Netlink had fired Bane while such qualification existed, so general jurisdiction existed. *Id.* at 641.

¶17 We see no distinction between the facts and law in *Bane* and this case. In both cases, the defendant was authorized to do business in the state when the precipitating events occurred. In both cases, the defendant had appointed a state officer as agent for service of process to be qualified to do business in the state. In both cases, the qualification to do business or appointment was withdrawn after the precipitating event. In both cases, the appointment for service of process or the statute provided that appointment as agent would continue for as long as liability remains outstanding against the corporation in the state.

*Due Process Considerations*

 ¶18 The second issue we must address is whether, by holding general personal jurisdiction exists under these facts, such jurisdiction comports with due process principles. We conclude that there is no constitutional infirmity.

 ¶19 Traditionally, a court has general personal jurisdiction of a defendant if the defendant either is present in the State, has consented to such jurisdiction or the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Burnham v.Super. Ct.,* 495 U.S. 604, 617–18, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (noting different bases for personal jurisdiction); *Ins.* *Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703–05, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (consent to be sued in the forum is an independent basis for general personal jurisdiction); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (applying due process principles based on minimum contacts for state to assert jurisdiction over nonpresent defendant); *Pennsylvania Fire Ins. Co.,* 243 U.S at 95–97, 37 S.Ct. 344 (holding that forum has general personal jurisdiction over nonpresent defendant who has consented to such jurisdiction based upon appointment of agent for service of process as required by statute). *See also Morgan Bank (Delaware) v. Wilson,* 164 Ariz. 535, 537, 794 P.2d 959, 961 (App.1990) (noting that consent, presence in the forum and causing effects in the forum are three types of activities by which a court can assert personal jurisdiction over a defendant, with consent being either express or implied). *Compare Williams v. Lakeview Co.,* 199 Ariz. 1, 3, 13 P.3d 280, 282 (2000) (discussing need for minimum contacts under long-arm statute for purposes of specific or general jurisdiction).

 ¶20 As explained by the Delaware Supreme Court, despite these separate bases for general personal jurisdiction, confusion has arisen among courts by conflating the principles applicable to each separate basis. *Sternberg v. O'Neil,* 550 A.2d 1105, 1109–13 (Del.1988). Specifically as it applies to the factual context of this case, there are two species of consent to personal jurisdiction-express and implied consent. *Id.* at 1109–10. Express consent occurs when a party somehow expressly agrees to be sued in the forum whether by contract, stipulation, or appointment of an agent pursuant to statute for purposes of service of process. *Id.* at 1109 & n. 4. Implied consent is a species of presence-that is, if the foreign defendant has sufficient minimum contacts with the state, consent to be sued in the state is implied. *Id.* at 1109–10. It is only under the latter situation that due process requires sufficient contact with the state so that maintenance of the suit in the forum does not "offend 'traditional notions of fair play and substantial

justice.'" *Id.* at 1109 (quoting *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154). As the Delaware Supreme Court concluded, by agreeing to appoint an agent for service of process to do business in a state, a foreign corporation expressly consents to general personal jurisdiction without any need for minimum contact analysis. *Id.* at 1111–13.

¶ 21 We agree with *Sternberg* based on our review of the underlying cases and authorities. In construing consent, the Supreme Court has made absolutely clear that appointment of an agent for service of process pursuant to permission to do business in a state by itself confers jurisdiction over the out-of-state defendant without offending due process:

> The construction of the Missouri statute thus adopted hardly leaves a constitutional question open. The defendant had executed a power of attorney that made service on the superintendent [of insurance] the equivalent of personal service. If by a corporate vote it had accepted service in this specific case, there would be no doubt of the jurisdiction of the state court over a transitory action of contract. If it had appointed an agent authorized in terms to receive service in such cases, there would be equally little doubt. It did appoint an agent in language that rationally might be held to go to that length. The language has been held to go to that length, and the construction did not deprive the defendant of due process of law even if it took the defendant by surprise, which we have no warrant to assert.

*Pennsylvania Fire Ins. Co.,* 243 U.S. at 94, 37 S.Ct. 344 (citations omitted).

¶ 22 In *Pennsylvania Fire Ins. Co.,* the defendant was an Arizona company which issued a policy of insurance on a building in Colorado. 243 U.S. at 94, 37 S.Ct. 344. The insurance company had obtained a license to do business in Missouri under a statute which required it to file with the Missouri insurance department a power of attorney consenting that service of process on the insurance "superintendent should be deemed personal service upon the company so long as it should have any liabilities outstanding in the state." *Id.* Service of process was made upon the defendant by service on the superintendent. *Id.* Both the Missouri Supreme Court and the United States Supreme Court held that personal jurisdiction did not violate the defendant's due process rights. *Id.* at 95–97, 37 S.Ct. 344.

¶ 23 Later Supreme Court decisions are in accord with *Pennsylvania Fire.* Thus, in *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), the Court confirmed that the appointment of an agent for service of process in a state dealt with jurisdiction over the person and service on the agent gave jurisdiction over the person. 308 U.S. at 175, 60 S.Ct. 153. In *Ins. Corp. of Ireland,* the court explained that consent was a form of waiver or estoppel to object to personal jurisdiction. 456 U.S. at 703–04, 102 S.Ct. 2099.[6]

¶ 24 We disagree with Erie's contention that in *Burnham* the Supreme Court rejected the concept of consent to jurisdiction through service of process on an agent. A plurality of the Court noted in dicta in *Burnham*[7] that many courts observed the underlying theory for personal jurisdiction based on presence or consent was a fiction which was cast aside by the minimum contacts/due process analysis of *Int'l Shoe.* 495 U.S. at 617–18, 110 S.Ct. 2105. The Court, however, did not retreat from its position in *Ins. Corp. of*

---

**6.** Two later Supreme Court cases dealing with business registration statutes do not contradict *Pennsylvania Fire Ins.,* but explain that there was no general personal jurisdiction because the local state court had not interpreted the registration statute to provide for general jurisdiction through appointment. *Morris & Co. v. Skandinavia Ins. Co.,* 279 U.S. 405, 409, 49 S.Ct. 360, 73 L.Ed. 762 (1929); *Robert Mitchell Furniture Co. v. Selden Breck Const. Co.,* 257 U.S. 213, 215–16, 42 S.Ct. 84, 66 L.Ed. 201 (1921). While the Court in *Morris* also stated that local courts should refrain from extending the meaning of such statutes to liability arising from transactions occurring within the state, 279 U.S. at 409, 49 S.Ct. 360, such dicta preceded the more modern interpretation of long-arm statutes and minimum contacts, thus having less relevance to the issues involved in consent to jurisdiction cases.

**7.** *Burnham* involved service of process of an out-of-state resident while he was temporarily present in the state. 495 U.S. at 607–08, 110 S.Ct. 2105.

*Ireland,* 456 U.S. at 703–04, 102 S.Ct. 2099, that when a party consents to personal jurisdiction, the party has effectively waived or is estopped from later denying such jurisdiction. Rather, the Court in *Burnham* stated that minimum contacts were needed to assert personal jurisdiction over "a *nonconsenting* defendant who is not present in the forum." *Id.,* 495 U.S. at 617–18, 110 S.Ct. 2105 (emphasis supplied) (citations omitted). *See also* Lee Scott Taylor, *Registration Statutes, Personal Jurisdiction, and the Problem of Predictability,* 103 Colum. L.Rev. 1163, 1185–89 (2003) (contending that use of registration statutes to find personal jurisdiction raises predictability problems, but noting that after *Ins. Corp. of Ireland* and *Burnham,* there is little doubt such use would survive due process challenge).

¶ 25 Express consent to jurisdiction through appointment of an agent without other contacts seems to be both the modern rule and supported by the Restatement (Second) of Conflicts of Law § 44 (1971) ("Restatement"). As explained by one leading commentator:

> [T]he modern rule is that a foreign corporation which, as a condition of doing business within the state, appoints an agent upon whom service of process may be made, has thereby given effective consent to be used not only in the state courts of that state, but in the federal courts as well. A foreign corporation's qualification to do business within a state, and its formal registration there, are sometimes viewed as "consenting" to be treated as a domestic corporation, thus permitting it to be sued there on causes of action over which the state's courts would otherwise decline to exercise jurisdiction. If a foreign corporation has not expressly consented to a state's jurisdiction by registration, "minimum contacts" with that state may provide a due process basis for the state's jurisdiction. However, if a foreign corporation has expressly consented to the jurisdiction of a state by registration, due process is satisfied and an examination of "minimum contacts" is unnecessary. Due pro-

cess is satisfied by express consent, since express consent constitutes a waiver of all other personal jurisdiction requirements. 18 Fletcher Cyc. Corp. § 8641 (Perm. Ed.) (emphasis supplied).[8]

¶ 26 Similarly, Restatement § 44 provides that a "state has power to exercise judicial jurisdiction over a foreign corporation which has authorized ... a public official to accept service of process in actions brought against the corporation in the state as to all causes of action to which the authority of the ... official to accept service extends." The basis for such jurisdiction is consent and it is "effective even though no other basis exists for the exercise of jurisdiction over the corporation." *Id.,* cmt. a. Absent contrary authority, we generally follow the Restatement. *Espinoza v. Schulenburg,* 212 Ariz. 215, 217, ¶ 9, 129 P.3d 937, 939 (2006).

¶ 27 We find further support for concluding that exercise of jurisdiction is constitutional in *Bane* and *Knowlton.* In *Bane,* discussed *supra* ¶¶ 15–17, the only contact the defendant foreign corporation had with Pennsylvania other than having employees occasionally travel there on business was the authorization to do business and appointment of a state official to accept service of process. 925 F.2d at 638–39. That authorization and appointment were found sufficient to confer general personal jurisdiction over the corporation, even though it had withdrawn its authorization to conduct business in the state after the events leading to the lawsuit had already occurred. 925 F.2d at 639–41.

¶ 28 In *Knowlton,* the Eighth Circuit Court of Appeals dealt with a plaintiff who was a Minnesota resident injured in Iowa in a car accident with a truck owned by a Delaware corporation. 900 F.2d at 1197. Plaintiff sued the defendant in federal court in Minnesota, where the company was authorized to do business and had appointed a resident agent to accept service of process. *Id.* at 1197–98. The United States District Court dismissed the complaint for lack of personal jurisdiction, concluding that the appointment of an agent was not sufficient consent to have jurisdiction over the defendant

---

**8.** Some courts, however, still require a minimum contacts analysis despite a corporation's registra-

tion and appointment of a person to receive process. 18 Fletcher, *id. See infra,* n. 9.

unless the cause of action related to the business conducted in Minnesota. *Id.* at 1198. The Court of Appeals reversed, holding that appointment of the agent for service of process was consent to the jurisdiction of Minnesota courts regardless of whether the action arose out of activities in the state. *Id.* at 1200. It also held that resort to minimum contacts analysis was unnecessary under *Ins. Corp. of Ireland. Id.*

¶ 29 Applying these principles of consent here, Erie agreed to personal service through the Director so long as any of "its liability remains outstanding in [Arizona], and that its removal from said State ... shall not take away or impair the right to commence any action ... against it, ... upon a liability previously incurred." Erie was still authorized to do business in Arizona at the time of the suit and had not withdrawn its consent to be served through the department. Accordingly, its consent to personal jurisdiction, whether construed as a waiver or estoppel, was still in effect.

¶ 30 We recognize that some courts have still held that minimum contacts analysis is necessary even when a foreign corporation appoints an agent in the state for service of process so as to be authorized to do business in that state.[9] We think the better line of cases hold that consent is sufficient by itself. To read in a minimum contacts/due process requirement would essentially nullify consent to jurisdiction when the out-of-state party has no such contacts. This would fly in the face of *Pennsylvania Fire Ins. Co.* and its progeny and conflate the concepts of express consent and presence or implied consent by minimum contacts.[10]

---

9. *E.g., Consol. Dev. Corp.,* 216 F.3d at 1293; *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir.1992); *Ratliff v. Cooper Labs., Inc.,* 444 F.2d 745, 748 (4th Cir.1971). *See also* Pierre Riou, Note, *General Jurisdiction Over Foreign Corporations: All That Glitters Is Not Gold Issue Mining,* 14 Rev. Litig. 741, 769–71 (1995); Matthew Kipp, *Inferring Express Consent: The Paradox of Permitting Registration Statutes to Confer General Jurisdiction,* 9 Rev. Litig. 1, 34 (1990).

10. Our conclusion does not conflict with *Van Denburgh v. Tungsten Reef Mines Co.,* 48 Ariz. 540, 548, 63 P.2d 647, 651 (1936). There, the issue was whether Arizona courts would have jurisdiction over a fraud claim brought by a

---

**CONCLUSION**

¶ 31 For the reasons stated above, we reverse the judgment of the superior court and remand this matter for further proceedings consistent with this decision.

CONCURRING: MAURICE PORTLEY, Presiding Judge and PATRICK IRVINE, Judge.

---

California resident acting under a California court order appointing him as an administrator against a Nevada corporation when there was no liability created in favor of an Arizona resident. The Arizona Supreme Court held that appointment of a statutory agent in Arizona would not provide jurisdiction because the cases which "establish jurisdiction to hear a suit against a corporation merely because of its compliance with statutory requirements, such as [designating a statutory agent], refer to actions for the benefit of citizens of the state where the suit is brought." This, of course, is exactly that kind of suit, thus consistent with *Pennsylvania Fire Ins. Co.* and its progeny.