Neel, Stephen E., J.
Secretary of the Commonwealth William Galvin (Secretary) seeks an order, pursuant to G.L.c. 110A, §407(c), compelling defendant Robert Jaffe (Jaffe) to comply with a subpoena to testily in connection with the Secretary’s investigation of Bernard Madoff (Madoff) and Madoff Investment Securities LLC (Madoff LLC). For the reasons stated below, the Court will order Jaffe to comply with the Secretary’s subpoena.
BACKGROUND
The record before the Court, including the complaint, the parties’ respective legal memoranda, and two affidavits submitted on behalf of Jaffe discloses the following, which the Court takes to be true for present purposes.
Shortly after Madoff s reported disclosure to federal agents, on December 10, 2008, that he had been conducting a Ponzi scheme and that his firm’s liabilities were estimated at $50 billion, the Secretary opened an investigation into Madoff, LLC and related persons. In connection with his investigation the Secretary learned that a number of Massachusetts investors, including charitable entities, had lost multiple millions of dollars through Madoffs scheme. Some of those investors reported to the Secretary that Jaffe “was the person who made representations concerning Mr. Madoff and participated in investing their funds or who directed that they invest their funds with Mr. Madoff.” Complaint, para. 3.
Jaffe is a Massachusetts registered representative of, and an owner of, defendant Cohmad Securities Corporation (Cohmad), a Massachusetts registered broker-dealer. Because of Jaffe’s reported close personal and professional ties to Madoff, the Secretary believes that Jaffe may have “significant information material to his investigation into Mr. Madoff.” Id., para. 5.
On December 17, 2008, the Secretary issued a subpoena commanding Jaffe to appear before the Massachusetts Securities Division on January 6,2009 and give sworn testimony “in the matter of: Bernard L. Madoff Investment Securities” (subpoena). The Secretary issued the subpoena in connection with his investigation of Madoff, and pursuant to the Massachusetts Uniform Securities Act, G.L.c. 110A (Act). He caused it to be served on Jaffe, apparently by certified or registered mail, return receipt requested, addressed to Jaffe at Cohmad’s New York office. The proof of service attached to the complaint bears the signature of “J. Larsen” on December 19, 2008.
Jaffe learned of the subpoena no later than December 18, when his counsel “contacted Secretary Galvin’s office to seek an adjournment.” Affidavit of Stanley S. Arkin (Arkin Aff.), para. 13. Between December 18 and December 24, Jaffe retained new counsel, Paul, Hastings, Janofsky & Walker LLP in New York. “Based on conversations occurring on December 24, 2008 between Mr. Jaffe’s [new] counsel and the Secretary, the date on which Mr. Jaffe was to appear was adjourned from January 6, 2009, to January 13, 2009.” Id., para. 14. The one-week “adjournment” of Jaffe’s appearance was an accommodation to Jaffe’s newly-retained counsel.
*275 On January 9, Jaffe’s counsel alerted the Secretary that Jaffe was suffering health problems that might affect his availability to testify on January 13. After sending doctor’s notes and verifying Jaffe’s brief hospitalization and release, Jaffe’s attorneys requested additional time to make up for their inability to consult with Jaffe because of his medical condition. Jaffe’s counsel stated, in an emailed letter to the Secretary dated January 12, that
Mr. Jaffe is not available to testify until he has been cleared to do so by [his doctor], until he has had a reasonable period of time to respond to the adjustment of his medications and until he has had sufficient time to consult with his attorneys . . . Mr. Jaffe’s medical condition has impacted his availability to consult with us. This is an independent reason that you should delay Mr. Jaffe’s appearance . . . Mr. Jaffe would need time to prepare after getting medical clearance ... In view of the foregoing, Mr. Jaffe does not intend to appear for testimony tomorrow. We ask that you tentatively schedule Mr. Jaffe’s testimony for either January 21, 2009 or January 22, 2009, subject to revision based on the factors set forth above.
Arkin Aff., Ex. O. Later that evening, Jaffe’s counsel sent by email a doctor’s note, “consistent with our letter tonight,” stating that Jaffe “can resume his usual travel and activities as of January 19, 2009.”
On January 13, 2009, the Secretary responded to Jaffe’s counsel by faxed letter: “In response to the information you provided last night indicating that Mr. Jaffe will be available to testify as of January 19,2009, the Massachusetts Securities Division is rescheduling Mr. Jaffe’s testimony for Wednesday, January 21, 2009 at 10:00 am at the offices of the Division. The testimony is pursuant to the initial subpoena served on December 17, 2008.” Arkin Aff., Ex. R.
Thus, as of January 13, nearly four weeks after receiving the subpoena, not only had Jaffe not asserted any objection to service of the subpoena or the Secretary’s jurisdiction over him, he had twice affirmatively agreed to appear, first at the January 13 adjournment of the original January 6 date, and then — again by agreement with the Secretary, and health permitting — at the January 21 adjournment, a date selected by his attorney.
On January 14, the Secretary filed this action. The Court issued an order of notice for hearing on January 21 at 2 p.m. On January 15, Jaffe was served with the summons, complaint, order of notice, and other papers (including a copy of the subpoena, attached to the complaint) at his residence in Florida, and at Cohmad’s offices, by process servers for each of those respective states.
On January 16, Jaffe apparently discharged Paul, Hastings, and retained his present counsel. On January 19, new counsel met with Jaffe. Also on that day, one month after Jaffe learned of the subpoena, his new counsel “notified the Secretary that Mr. Jaffe would not be appearing for his deposition then scheduled for January 21, 2009 because not only did the complexify of the situation require more time to prepare Mr. Jaffe, but serious Constitutional issues are raised by the Secretary’s subpoena.” Arkin Aff., para. 30.
On January 20, Jaffe’s counsel set forth in a faxed letter to the Secretary five reasons why Jaffe would not appear the next day. Those reasons may be summarized as (1) failure of service and “subsequent written or oral modifications to the administrative subpoena ... fatal even if it had been legally served”; (2) violation of the U.S. Constitution; (3) inadequate time for new counsel to prepare; (4) the burden on Jaffe if the Secretary does not coordinate his investigation with other regulators; and (5) intentional misconduct in the form of press leaks by the Secretaiy’s office. Arkin Aff., Ex. T. Each of the grounds, except for inadequate time for counsel preparation, was new; none asserted that Jaffe had any health problem which would affect his ability to appear on January 21.
Jaffe failed to appear at the Secretaiy’s office at the scheduled time of 10 a.m. on January 21, and the matter was heard by Court that day at 2:00 p.m.
DISCUSSION
Jaffe’s principal challenge to the Secretaiy’s application is that neither the Secretary nor the Court have jurisdiction over his person such that he, allegedly a Florida resident, may be required to appear in Massachusetts in response to the Secretary’s subpoena. The Court will first consider the sufficiency of the subpoena under Massachusetts law, and will then address the jurisdictional challenge.
I. Sufficiency of the Subpoena under Massachusetts Law
Were Jaffe a Massachusetts resident, there is little doubt that the Secretaiy’s subpoena would be enforceable.
The Act grants to the Secretary, as administrator of the Act, id., §406, exceptionally broad discretionary powers, consistent with general principles of administrative law. See, e.g., Lindsay v. Department of Soc. Servs., 439 Mass. 789, 797 (2003); L.G.G. v. Department of Soc. Servs., 429 Mass. 1008, 1009 (1999); Boston Preservation Alliance, Inc. v. Environmental Affairs, 396 Mass. 489, 496 (1986); Levy v. Board of Registration and Discipline in Med., 378 Mass. 519, 525 (1979). The Legislature has directed that courts shall construe the Act so as to “effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation.” G.L.c. 110A, §415; see Marram v. Kobrick Offshore Fund. Ltd., 442 Mass. 43, 50 (2004).
Section 407(a) of the Act provides that the Secretary “in his discretion (1) may make such public or private *276 investigations within or outside of the commonwealth as he deems necessary to determine whether any person has violated or is about to violate any provision of this chapter or any rule or order hereunder ...” Section 407(b) provides that, “(f]or the purpose of any investigation . . . under [the Act], the secretary . . . may subpoena witnesses ...”
There is scant authority in Massachusetts interpreting §407 of the Act. The test for determining the sufficiency of a subpoena issued under §407(b) has been addressed in two Superior Court decisions, Galvin v. Massachusetts Mut. Life Ins. Co., 2006 WL 340246 (Mass.Super. 2006) (Garsh, J.), and Galvin v. The Gillette Co., 2005 WL 1155253 (Mass.Super. 2005) (van Gestel, J.), each involving a subpoena duces tecum served on a Massachusetts entity.
In Massachusetts Mut. Life Ins. Co. the court, citing United States v. Powell, 379 U.S. 48, 57-58 (1964), stated that it should enforce the subpoena “provided that it has a legitimate purpose within the Secretary’s statutory authority; the information sought by the Subpoena may be relevant to the Secretary’s inquiry; the information sought is not already within the Secretary’s possession, and the Subpoena has not been issued for an improper purpose, such as harassment . . .’’In The Gillette Co., the court quoted the standard for enforcement of IRS subpoenas in United States v. Gertner, 65 F.3d 963, 966 (1st Cir. 1995): “when a challenge to a summons is lodged, the IRS must only satisfy the court that (1) its investigation is being conducted pursuant to a proper purpose, (2) the information sought in the summons is (or may be) relevant to that purpose, (3) the information is not already within the IRS’s possession, and (4) all legally required administrative steps have been followed.”
The Court is satisfied that the Secretary’s investigation of the alleged Madoff scheme under, e.g., c. 110A, §101 (prohibiting fraud in the sale of securities) and § 102 (prohibiting fraud in the giving of investment advice) is conducted pursuant to a legitimate purpose; that the information which the Secretary seeks from Jaffe, a close associate of Madoff who reportedly “made representations concerning Mr. Madoff [to Massachusetts investors] and participated in investing their funds or . . . directed that they invest their funds with Mr. Madoff,” Complaint, para. 3, is or may be relevant to that purpose;[1] that the information is not already within the Secretary’s possession; and that the subpoena has not been issued for an improper purpose."[2] Whether all legally required administrative steps have been followed is addressed below.
II. Personal Jurisdiction Over Jaffe A. Consent to Jurisdiction
The parties’ submissions raise two issues of personal jurisdiction (and related service of process): one is whether Jaffe is subject to the jurisdiction of the Secretary in connection with the latter’s investigation of Madoff; the second is whether Jaffe is subject to the jurisdiction of this Court in this action, brought against him as a direct defendant, to enforce the Secretary’s subpoena.
With regard to the former, the Secretary asserts that Jaffe is foreclosed from contesting personal jurisdiction in Massachusetts because he has consented thereto. It is not disputed that on November 6, 1989, Jaffe signed a Form U-4, “Uniform Application for Securities Industry Registration or Transfer” (Form U-4). See c. 110A, §202; 950 CMR 12.202. Jaffe, the applicant, having indicated in Item 10 that he was “to be registered with the following: Jurisdictions — MA,” signed the application on page 4 in a box headed “THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY,” and containing the following pertinent language (emphasis added):
2.1 hereby apply for registration with the . . . states indicated in Item 10 [i.e., Massachusetts] . . . and, in consideration of such . . . state! ] receiving and considering my application, I submit myself to the jurisdiction of such state[ ] . . . and hereby certify that ... I agree to comply with, be subject to and abide by ... all rulings, orders, directives and decisions of. . . such state[ ] . . . , subject to right of appeal as provided by law . . .
The subpoena at issue here states in part as follows:
To: Mr. Robert Martin Jaffe
Cohmad Securities Corporation
885 Third Avenue, 18th Floor
New York, NY 10022
Pursuant to Massachusetts General Laws Chapter 110A, §407(b), YOU ARE HEREBY COMMANDED, in the name of the Commonwealth of Massachusetts to appear personally and give testimony before the Massachusetts Securities Division, Office of the Secretary of the Commonwealth, John W. McC-ormack Building, One Ashburton Place, Room 1701, Boston, Massachusetts, 02108, on January 6, 2009 at 10:00 a.m. This oral examination will continue until completed.
The subpoena is signed in the name of the Secretary by the Associate Director & General Counsel of the Massachusetts Securities Division.
In light of the foregoing, it is clear that Jaffe has agreed to “submit myself’ — literally, his person — to the jurisdiction of Massachusetts, and “to comply with, be subject to and abide by . . . all. . . orders [and] directives” of Massachusetts. It is also clear that the Secretary’s “COMMAND! ], in the name of the Commonwealth of Massachusetts to appear personally and give testimony before the Massachusetts Securities Division, Office of the Secretary,” is both an “order” and “directive” by the Commonwealth to appear. See In re Simon, 297 F. 942, 945 (2d Cir. 1924), quoting Burns v. Superior Court, 140 Cal. 1, 73 P. 597, 598 (1903) (“the very etymology of the word ‘subpoena’ signifies ‘an order with a penalty for disobedience’ ”). *277 Having already determined that the subpoena is otherwise within the investigatory authority of the Secretary under §407(a), the Court further concludes that Jaffe has consented to the exercise of jurisdiction by the Commonwealth (represented by the Secretary) over his person by means of the subpoena.
Paragraph 2 does not limit Jaffe’s consent to jurisdiction to orders of the Secretary; it is sufficiently general (“submit myself to the jurisdiction of such state! ]”) to provide his consent to the Court’s jurisdiction as well (“I agree to comply with, be subject to and abide by ... all rulings, orders, directives and decisions of. . . such state! ]”)•
Jaffe asserts that he has not consented to service of process of investigative subpoenas, relying on that portion of paragraph 6 at page 4 of the U-4 application which states that he appoints the “administrator” (i.e., the Secretary) his attorney for service of process in any “action or proceeding against me” arising out of sales of securities. Because the Secretary’s investigation is of Madoff, not Jaffe, Jaffe argues that he has not consented to service of the Secretary’s subpoena in furtherance of that investigation. See Memorandum in Opposition to Application to Enforce Subpoena (Jaffe Memorandum), at 12. Jaffe further argues that “an investigation does not appear to be either an ‘action’ or ‘proceeding’ even if it were ‘against’ Mr. Jaffe, which it is not.” Id., n. 7.
Jaffe’s argument both misreads paragraph 6 and ignores paragraph 2, discussed above. Paragraph 6 provides, in pertinent part (emphasis added):
I, the undersigned, for the purpose of complying with the laws of [Massachusetts]... relating to sale of securities . . . , hereby irrevocably appoint the administrator of [that State]. .. my attorney in said State[ ] upon whom may be served any notice, process or pleading in any action or proceeding against me arising out of or in connection with the offer or sale of securities... or out of the violation or alleged violation of the aforesaid laws of said state! 1 and I do hereby consent that any such action or proceeding against me may be commenced in any court of competent jurisdiction and proper venue within said State[ ] by service of process upon said appointee with the same effect as if I were [a] resident in said State[ ] and had lawfully been served with process in said State[ ]. It is requested that a copy of any notice, process or pleading served hereunder be mailed to me at my residence.
Thus, under paragraph 6, “for the purpose of complying with the laws [of Massachusetts] relating to sale of securities” — e.g., c. 110A, §407 — Jaffe has appointed the Secretary his attorney for service of process in “any action or proceeding against me ... in connection with” the sale of securities or an alleged violation of the Act. Even if the Secretary’s investigation of Madoff s sales of securities and alleged violations of the Act is not an “action or proceeding” against Jaffe, this lawsuit is, because it is brought directly against Jaffe under c. 110A, §407(c) to enforce a subpoena issued “in connection with” that investigation.
As the above discussion demonstrates, Jaffe has consented to the jurisdiction of Massachusetts, as represented both by the Secretary as administrator of the Act, and the Court, in two ways. He has done so directly, in paragraph 2 of Form U-4 (at least as to any matters relating to the Act, as here), and in paragraph 6, by appointment of the Secretary as his agent for service of process in actions or proceedings against him in connection with sales of securities or violations of the Act. Both have been held sufficient to confer personal jurisdiction.
For example, in Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1199-2000 (8th Cir. 1990), the court stated:
Consent is the other traditional basis of jurisdiction, existing independently of long-arm statutes. Personal jurisdiction, unlike subject-matter jurisdiction, is primarily concerned with fairness to individual parties. Objections to jurisdiction over the person may be waived, either expressly or by not asserting them in a timely manner. A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it. One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State.
See also Sternberg v. O’Neil, 550 A.2d 1105, 1111-17 (Del. 1988) (“corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, [expressly] consents to the exercise of [general] personal jurisdiction in any action that is within the scope of the agent’s authority”); Merriman v. Crompton Corp., 282 Kan. 433 (2006) (adopting the Delaware court’s analysis in Sternberg); Bohreer v. Erie Insurance Exchange, 216 Ariz. 208, 214 (2007) (agreeing with Sternberg that, under Pennsylvania Fire Ins. Co. Of Philadelphia v. Gold Issue Mining & Milling Co., 243 U.S. 93 (1917), “appointment of an agent for service of process pursuant to permission to do business in a state by itself confers jurisdiction over the out-of-state defendant without offending due process”; court also relies on Restatement (Second) of Conflict of Laws §44 in reaching this result). But see Freeman v. District Court, 116 Nev. 550 (2000) (concluding that appointment of an agent to receive service of legal process, as required by the Nevada insurance statute, does not in itself subject a non-resident insurance company to the personal jurisdiction of Nevada courts, citing International Shoe Co. v. Washington, 326 U.S. 310 (1945), for proposition that focus on jurisdiction is no longer the state’s physical power over a defendant, but requires a review of fundamental fairness).[3]
Several procedural matters remain to be addressed.
*278 Chapter 110A, §407(c) requires the Secretary to commence an enforcement action in “the superior court for the county in which the person is found or is an inhabitant or transacts business . . .” Because Jaffe has given his “consent that any such action or proceeding against me may be commenced in any court of competent jurisdiction and proper venue within said State[ ] by service of process upon said appointee with the same effect as if I were [a] resident in said State! ] and had lawfully been served with process in said State[ ],” paragraph 6, the requirements of §407(c) are met.
An additional requirement for valid service of process in this action is found in c. 110A, §414(g). That provision (which is reflected in paragraph 6 of Form U-4) states:
Every applicant for registration under this chapter . . . shall file with the secretary, in such form as he by rule prescribes, an irrevocable consent appointing the secretary or his successor in office to be his attorney to receive service of any lawful process in any non-criminal suit, action, or proceeding against him .. . which arises under this chapter or any rule or order hereunder after the consent has been filed, with the same force and validity as if served personally on the person filing the consent. A person who has filed such a consent in connection with a previous registration need not file another. Service may be made by leaving a copy of the process in the office of the secretary but it is not effective unless (1) the plaintiff, who may be the secretary in a suit, action or proceeding instituted by it, forthwith, sends notice of the service and a copy of the process by registered mail to the defendant or respondent at his last address on file with the secretary, and (2) the plaintiffs affidavit of compliance with this subsection is filed in the case on or before the return day of the process, if any, or within such further time as the court allows.
The return of service of the Summons and Order of Notice, Complaint, and related papers in this case, attached to the Secretary’s Memorandum, comprises two affidavits from “Certified Process Servers’’ for, respectively, Palm Beach County, Florida, (certifying service at Jaffe’s “usual place of abode” in Palm Beach, Florida, “to Steven Jaffe, Son”)[4] and New York, New York (certifying service at Cohmad Securities Corporation, 886 Third Avenue, 18th Floor, upon Marcia Cohen, President, as authorized to accept on behalf of the above-named entity."
The returns of service of process in this action do not comply with §414(g)’s requirement of service by registered mail, and may or may not comply with the requirement of service at Jaffe’s “last address on file with the secretaiy.” However, because actual service was made, the Court considers the manner of service of process in this action sufficient.
Finally, Jaffe argues that, even if the Secretary is authorized to issue subpoenas to out-of-state witnesses, Massachusetts has no law governing the service of such subpoenas, and he has not consented to service upon him as a witness in the administrative investigation (as opposed to service of process in an action against him). Further, Jaffe argues, the Court should not craft a procedure for service of administrative subpoenas. Jaffe Memorandum, at 11.
In an action before a court, defenses based on insufficiency of process, or insufficiency of service of process, are waived if not timely asserted. See, e.g., Mass.R.Civ.P., Rule 12(h)(1). In the context of the administrative subpoena at issue here, Jaffe did not object to service of process but instead agreed to appear on January 13, and thereafter, health permitting, to appear on January 21. Both dates were agreed by counsel to constitute adjournments of the original January 6 date specified in the subpoena. Because he agreed to appear on two occasions, asserted no health-related reason for failing to appear on January 21, and waited for more than a month after notice of the subpoena to object to service of process, Jaffe may well have waived that objection.
In any event, the lack of a procedure under Massachusetts law for service of a subpoena issued under §407 — whether to a resident in or out of state — should not render such a subpoena invalid, at least if the subject of the subpoena receives actual notice of it and has fair opportunity to object. Nor does the fact that neither Massachusetts nor Florida have adopted the 1985 revision of the Uniform Securities Act, “containing a procedure for taking of testimony in the state of a nonresident witness for the purpose of an investigation being conducted in another state,” Silverman v. Berkson, 141 N.J. 412, 661 A.2d 1266, 1268 (1996), lead to a different conclusion. As the court in Silverman stated, “general principles of administrative law suggest that the Legislature intended the agency to have the authority necessary to fulfill its function to investigate, within and without the State, securities transactions involving [that state’s] residents.” Id. at 1269. Authority to issue a subpoena “within and without” the state implies authority to serve it, even though the procedure for doing so is unspecified. The Court need not construct such a procedure in the circumstances of this case, where Jaffe clearly received actual notice of the subpoena, had fair opportunity to object to the manner in which it was served, and instead agreed not once but twice to comply.
B. Due Process
Jaffe argues that the Secretary’s subpoena violates the U.S. Constitution because, “[s]imply put, the Constitution prohibits one state from compelling the attendance of a witness from another state.” Jaffe Memorandum at 5, citing Minder v. Georgia, 183 U.S. 559, 562 (1902), and similar cases. Even if Jaffe had *279 not consented to personal jurisdiction, the Court concludes that the exercise of jurisdiction by the Secretary and the Court do not violate constitutional due process.
Both sides refer the Court to Silverman v. Berkson, supra, 661 A.2d 1266, a case nearly identical to the present case, and considered by one authority “the leading case in the area” of enforcement of out-of-state administrative subpoenas. Long, J., Blue Sky Law, §11:43 (November 2008). In Silver-man, the issue was “the authority and power of a New Jersey agency investigating securities transactions involving New Jersey residents to issue a subpoena to a witness outside of the State’s boundaries, and the corresponding authority and power of a New Jersey court to enforce such a subpoena.” Like the Act adopted in Massachusetts, New Jersey’s version of the Uniform Securities Act contained no provision “affording a procedure for the Bureau to take out-of-state testimony of a non-resident witness.” Id. at 1268.
As in this case, the subpoenaed witness in Silver-man raised constitutional due process objections based on Minder. The court stated that “(t]he issue in Minder was whether a criminal defendant in Georgia had received a fair trial when he could not subpoena material defense witnesses who were outside Georgia. At that time, Georgia law made no provision to subpoena out-of-state witnesses.” By contrast, “(t]he question in this case is not whether a state may compel attendance in the forum of any out-of-state witness, but rather whether it may require the attendance of one who has purposely availed himself of the privilege of entering regulated securities markets in the forum state.” Silverman, at 1273.
Noting that, under International Shoe Co. v. Washington, supra, the Supreme Court “held that a state court’s assertion of personal jurisdiction does not violate the Due Process Clause if the defendant has ‘certain minimum contacts with it such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice," ’ “ Silverman at 1270, the court concluded as follows:
We believe that, consistent with the principles of International Shoe, a State agency may require the appearance of witnesses from outside New Jersey. It is true that there is a difference between this case and International Shoe. “The distinction between service of notice and service of compulsory process is a crucial one under principles of both domestic and international law.”... The conclusion does not inevitably follow from International Shoe that if a state may exercise personal jurisdiction pursuant to long-arm service, it may exercise its jurisdiction to subpoena to the same limits . . . Still, we believe that the measures of sovereign power are ultimately the same. The concepts of “jurisdiction to prescribe” (“the authority of a state to make its law applicable to persons or activities") and “jurisdiction to adjudicate” (“the authority of a state to subject particular persons or things to its judicial process”) .. . are closely linked.
Id. at 1272-73.
The Court concludes that the analysis in Silverman is apt in the circumstances of the present case, and will therefore apply traditional due process standards to the jurisdictional issue.
In Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), the Supreme Court set out the standard for determining whether an individual has been afforded due process:
The Due Process Clause protects an individual’s liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations. By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign, the Due process clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or related to those activities.
Id. at 471-72 (internal quotations and citations omitted). The Court went on,
[T]he constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum state . . . the foreseeability that is critical to due process analysis ... is that the defendant’s conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there . . . This purposeful availment requirement ensures that a defendant will not be haled into ajurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state.
Id. at 474-77 (internal quotations and citations omitted).
In Tatro v. Manor Care, Inc., 416 Mass. 763 (1994), the Supreme Judicial Court recognized three components to this standard: (1) the party over whom jurisdiction is asserted must have minimum contacts with the forum, established by means of some act by which that party purposefully avails *280 itself of the benefits of conducting activities within the forum state, thus invoking the benefits and protections of its laws; (2) the claim must arise out of, or relate to the party’s contacts with the forum; and (3) the assertion of jurisdiction must not offend traditional notions of fair play and substantial justice, in light of such factors as the burden of litigating in the forum, the forum’s interest in adjudicating the dispute, and the claimant’s interest in obtaining relief. Id. at 772-73.
Here, Jaffe’s contacts with Massachusetts consist of his registration in Massachusetts as a representative of Cohmad Securities Corporation, a Massachusetts broker-dealer, and his dealings with Massachusetts investors on behalf of Madoff. The Secretary’s action indisputably arises out of Jaffe’s contacts in Massachusetts, where the Secretary seeks to obtain information from Jaffe related to his involvement with Cohmad, an entity in which Madoff has an ownership interest, and to his direct involvement in sales by Madoff of securities to Massachusetts investors. There is nothing before the Court that would indicate that the assertion of jurisdiction over Jaffe is unduly burdensome or otherwise unfair in light of the significant interests at stake.[5] The only remaining issue, therefore, centers on whether Jaffe’s contact with Massachusetts is sufficient to satisfy the requirement of minimum contacts. The Court concludes that it is.
Contact satisfying the due process requirement must consist of “some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,” so that the party can reasonably foresee that it will be haled into court in the forum. Burger King Corp., 471 U.S. at 474-75 (internal quotations and citations omitted). A single contact satisfies that requirement if it creates a “substantial connection” with the forum state. Id. at 475, n.18, citing McGee v. International Life Insurance Co., 355 U.S. 220, 223, (1957). See also Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994) (one “meaningful” contact is sufficient).
The very act of filing registration documents with the Division is sufficient to constitute a minimum contact. The First Circuit, citing Burger King Corp. and McGee, has noted that a single contract that had a substantial connection with the forum was enough. Pritzker v. Yari, supra, 42 F.2d at 61. The court concluded that, where “the jurisprudence of minimum contacts casts a wide net ... a nonresident defendant may not always be able to elude the net by such simple expedients as remaining physically outside the forum or limiting contact with the forum to a single commercial transaction . . . courts must . . . evaluate the nature of the contacts and, relatedly, the degree to which they represent a purposeful availment of the forum’s protections and benefits." Id. at 62.
There can be no doubt that Jaffe’s registration in Massachusetts as an agent of Cohmad, a registered Massachusetts broker-dealer (permitting Jaffe to “transact business” in the Commonwealth, see G.L.c. 110A. §§201 and 202), together with his transaction of business in connection with the very matter under investigation by the Secretary, satisfies the purposeful availment prong. Accordingly, Jaffe’s constitutional argument fails.
The Court is mindful of the need to balance the Secretary’s desire to take Jaffe’s testimony as soon as practicable, and Jaffe’s current counsel’s need for adequate time to prepare their client for his testimony, and to make appropriate travel arrangements. Accordingly, the order will allow Jaffe until February 6, 2009, to comply with the subpoena.
ORDER
For the reasons stated above, the Secretary’s application for an order enforcing the administrative subpoena issued to defendant Robert M. Jaffe is GRANTED. It is therefore ORDERED that defendant Robert M. Jaffe shall comply with the subpoena by appearing at the offices of the Securities Division of the Secretary to give testimony under oath in the matter of Bernard L. Madoff Investment Securities on a date to be agreed to by the parties, but not later than February 6, 2009.

 Jaffe has not contested that he is registered as an agent with the Securities Division, and that the subpoena, and this action, arise out of his transaction of business in Massachusetts relating to the sale of securities.

As noted above, Jaffe’s present counsel allege “intentional misconduct in the form of press leaks by the Secretary’s office.” Arkin Aff., Ex. T. In view of the extended course of dealing between the Secretary and Jaffe’s various attorneys over scheduling, and what Jaffe’s counsel conceded at hearing to be the Secretary’s “patience,” the Court concludes that in this case, as in Galvin v. Massachusetts Mut. Life Ins. Co., supra, ”[t]he Secretary’s willingness to vent his frustration in the media does not support the presence of Gertner-type pretext here.” Id.

To the extent that Massachusetts law may require a fairness analysis under International Shoe, cf. Saporita v. Litner, 371 Mass. 607, 617-18 (1976), the Court addresses the issue below.

Jaffe states, in his affidavit, that “I became a resident of Florida in January of 2002 and currently reside in Palm Beach.”

As noted above, Jaffe argues that the date for any testimony should be delayed to allow coordination of the Secretary’s investigation with Investigations of other regulators, so that the burden on Jaffe may be reduced. Such coordination may become necessary at some point, but at present Jaffe has not cited a single specific subpoena directed against him other than the Secretary’s. In any event, Jaffe’s argument is outweighed, at this time at least, by the public interest in a timely investigation.